WELLS
*vs.*
WALKER ET AL.

## WELLS *vs.* WALKER ET AL.

APPEAL FROM THE COURT OF THE SECOND JUDICIAL DISTRICT, THE JUDGE
THEREOF PRESIDING.

In an action by a vendee against the vendors of his vendor, who are
in possession, and claim the contested premises as the original owners;
alleging that the sale by them to the plaintiff's vendor was simulated, and
had been rescinded and re-conveyed, as appeared by two counter-letters:
*Held,* that the question was, whether the plaintiff knew at the time he
purchased, of the defects of the seller's title, and that it was simulated,
or had been rescinded.

The question of the buyer's knowledge of the defects in his vendor's
title, as that the latter held the property by a simulated sale, is one of
fact, which the jury has a right to decide, from all the evidence of the case.

Where the purchaser, at the time of the sale, has knowledge that his
vendor's title is simulated or rescinded, as between the latter and *his
vendors,* the plaintiff's situation is no better than the seller to him.

The principle is established and settled, that the first vendor has a right to
avail himself of a counter-letter in a simulated sale, and recover back his
property. His case is more favorable, in relation to the person who
purchased from his vendee, when he is defendant, and in possession.

This is a petitory action. The plaintiff alleges he is the
*bonâ fide* and legal owner of two tracts of land, or plantations,
with the slaves and appurtenances belonging thereto, situated
in the parish of Terrebonne, which he purchased from one
Phineas Gardner and wife, for the price of thirty-seven
thousand, five hundred dollars, by public act, passed before
the parish judge of the parish of Rapides, the 6th day of
November, 1833. That said lands or plantations were the
same which the said Gardner purchased from D. S. and R. J.
Walker, by deed or public act, dated the 11th September, 1832.
He further alleges that said D. S. and R. J. Walker have,
without any right or title, taken possession, and continue to
occupy the premises, and deprive him of the possession and
enjoyment thereof. He prays that the defendants may be

EASTERN DIST.
*March,* 1835.

WELLS
*vs.*
WALKER ET AL.

declared to have no title, and be adjudged to restore and quiet him in the possession, and pay damages and costs.

The defendants pleaded a general denial. They further averred, that the pretended sale of the disputed premises, from Gardner to Wells, was fraudulent and collusive, and without consideration. They admitted that, being desirous of obtaining stock in the Union Bank, they executed nominal deeds or acts of sale, in July and September, 1832, to said Gardner, then their overseer and manager, and on the same days, took notarial letters of attorney to subscribe for stock, in the name of Gardner, for their benefit; and Gardner, at the same time, executed to them counter-letters, showing the object of the sales, and that they were simulated.

The defendants further state, that Gardner grossly mismanaged their business, so that he was dismissed from their employ, on the 7th of March, 1833. That four thousand five hundred dollars of said bank stock was taken in his name, which he refused to transfer and assign, as he agreed to do, but proceeded to New-Orleans, and fraudulently received two thousand two hundred and fifty dollars, on the property so mortgaged in his name, and soon after quit his residence in the parish of Terrebonne, and removed to Rapides. And that Gardner never occupied, possessed, or visited his said pretended property, or furnished supplies for the plantations and slaves, but falsely and fraudulently sold the same to the present plaintiff, who knew his vendor had no title, and that he was not the owner, and who never put him in possession; and further, that they united together to defraud the defendants, and deprive them of their just title thereto. The defendants further averred, that both Gardner and Wells were destitute of means with which to acquire property, following the vocation of overseers for a support; and that their want of means to make the purchases, as alleged by them, of the valuable property in contest, was notorious. They aver that, in consequence of Gardner's re-conveyances or counter-letters, he is bound to warrant them against his own acts, and all others claiming under

him. They call him in warranty, and pray that the plaintiff's claim be rejected, his deed from Gardner annulled, and that he be compelled to re-convey to them; and that Gardner be ordered to transfer said property and bank stock to them, and pay the sum of two thousand two hundred and fifty dollars, which he fraudulently obtained on said stock. Gardner pleaded a general denial to the call in warranty.

On the trial, several depositions were read, on the part of the defendants, to show that Wells and Gardner were both overseers, and possessed but little property; and also to raise the presumption that the plaintiff knew of the defective and fictitious title he purchased, and by which Gardner pretended to claim the property he sold. It was in proof Gardner consulted counsel in relation to his titles, before he sold to the plaintiff; but the result of the advice was not disclosed. Negative evidence was produced, inducing the belief that Wells must have purchased with a knowledge of the titles under which the property was sold; and further, that he resides in the parish of Rapides, and never went to take possession, or even to visit the premises. Gardner left the premises when he was dismissed as overseer, in March, 1833. The defendants annexed the counter-letters from Gardner, to their answer, which were read in evidence, and of the following tenor.

"Whereas, there was on this day (11th September, 1832,) passed before the parish judge of the parish of Terrebonne, a sale for the lands specified in said deed of that date, being for three thousand six hundred arpents, &c. Now, all the money specified in said deed as being paid, being refunded by D. S. and R. J. Walker, the grantors, to Phineas Gardner, the grantee, said deed is cancelled, rescinded and annulled, in the same manner as if the said deed had never been executed. Thus subscribed and agreed to, this 12th day of September, A. D., 1832. The stock obtained by Gardner in the Union Bank, to be assigned to D. S. and R. J. Walker." Signed by both parties in the presence of a witness. Recorded the 11th day of February, 1834. Service of the petition in

this suit, was acknowledged by the defendants, the 17th February, 1834. The sale from Gardner to Wells is dated the 6th November, 1833.

The cause was submitted to a jury. The district judge charged them that if they considered the private acts between the original parties as counter-letters, they could not be opposed to creditors or *bonâ fide* purchasers, even if he who holds them, be in possession. That if they are not considered as counter-letters, but as acts of sale, under private signature, and had been followed by possession, they were sufficient to protect the defendants against the plaintiff's claim; being followed by possession, they were notice. sufficient to put the plaintiff on his guard; and that good faith in him will not avail against a private act, accompanied by possession, &c. That whether these acts be counter-letters, or acts *sous seing privé*, was a question for the jury to determine. The difference between a counter-letter and private act, and their definitions, were explained and given to the jury.

The jury returned a verdict upon the whole evidence, for the defendants. Upon which judgment was rendered, quieting them in their possession of the plantations, lands, and slaves; and that the latter recover of Gardner, the sum of two thousand two hundred and fifty dollars; and that the plaintiff pay all costs. Wells and Gardner both appealed.

*Dunbar, E. F. Briggs and Nicholls,* for the plaintiff, made the following points.

1. The instruments or acts from Gardner to Walkers, are counter-letters, and not acts of sale under private signature; and can have no more effect than the former, when not recorded before the sale to the plaintiff. 8 *Toullier,* 262.

2. The defendants considered these acts as counter-letters, and not sales, by mortgaging the property afterwards, and for that purpose obtaining a counter-power of attorney from Gardner.

3. Counter-letters are not good, and cannot have any effect against *bonâ fide* purchasers. 8 *Toullier,* 262. *La. Code, article* 2236.

3

4. This court has been called on to give a construction or effect, or to decide on the validity of counter-letters in but four cases that are recollected. Some were between the parties. It is settled that *bonâ fide* purchasers cannot be effected by private and concealed agreements, entered into between parties to a fictitious sale; and that acts under private signature, *whose dates are proven by evidence* dehors *the instrument, accompanied by possession, and when the transaction is bonâ fide,* are good and valid. 5 *Martin*, 145. 6 *Ibid.* 260. *Ibid.* 429. 1 *Louisiana Reports*, 116.

5. Counter-letters are not included in the terms of the *Louisiana Code*, article 2415–17.

6. Considered as a sale, the acts from Gardner to the Walkers is not good against Wells. The latter acquired a legal possession by public act from his vendor, which a private act does not give. *Louisiana Code*, 2455.

7. But sales under private signature are only good against *bonâ fide* purchasers, from the day on which they are registered, or from the time of *actual* delivery. *Louisiana Code*, 2242.

8. There being no registry, the Walkers must succeed (if at all) by actual delivery. There is neither actual or symbolical delivery to them. Possession if proven would not suffice.

9. Possession without registry of title by private act, is not sufficient. The Code requires both registry and possession. *Louisiana Code*, article 2417. This article is cumulative in its provisions, and the contradictions between it and 2242, must be reconciled by giving effect to the last article in the Code. 6 *Louisiana Reports*, 145.

10. This court has decided the following cases, in relation to sales by acts *under private signature*:

1. When not recorded, is not good against third persons. 3 *Martin*, 616.

2. Vendor's privilege, to effect third parties, must be recorded. 1 *Martin, N. S.* 384.

3. When accompanied by possession, is good. 2 *Martin, N. S.* 171.

EASTERN DIST.
*March*, 1835.

WELLS
*vs.*
WALKER ET AL.

4. Sale with possession good, actual delivery not being proved. But not good against purchasers to whom delivery was made. 4 *Martin, N. S.* 368.

5. Not good without actual delivery. 7 *Martin, N. S.* 579.

6. Act of 1816 not repealed by *Louisiana Code.* Registry of sale still necessary. Evidence of sale, possession and actual delivery good. 7 *Martin, N. S.* 662.

7. Sale made with the avowed intention to defraud, is null and void. 2 *Louisiana Reports*, 81.

8. Sale-dates only from its registry. 4 *Louisiana Reports*, 273.

9. Sale of slaves not necessary to be registered in the parish. 4 *Louisiana Reports*, 338.

10. Sale not registered, accompanied with possession, not good against a recorded mortgage. 4 *Louisiana Reports*, 239.

*Louis Janin*, for the defendants.

1. This case presents only a question of fact. The evidence leaves no doubt that the plaintiff purchased with a knowledge of Gardner's fraud, and combined with him to defraud the defendants of the property he claims.

2. But even had the plaintiff purchased in good faith, the defendants would be entitled to relief; for a sale under private signature, accompanied by possession, is valid against third persons, although not recorded. *Louisiana Code*, 2242. 2 *Martin, N. S.* 171. 4 *Ibid.* 370. 5 *Ibid.* 423. 6 *Ibid.* 429. 7 *Ibid.* 580.

3. In the case where the party relied on a counter-letter, he succeeded, which in all respects produces the same effect as a retrocession by private act. 6 *Martin, N. S.* 429.

4. The property claimed was always in possession of the defendants. It is true a sale may be perfect between the parties before delivery, according to the article 2431 of the Code, yet it cannot effect the rights of third persons, until *delivery*, either *actual* or *symbolic*. Before that takes place, the vendee has no rights independent of his vendor,

and can only exercise those which his vendor had before sale. This is the case between Wells and Gardner.

5. In a sale of slaves, delivery may be either *real* or affected by the mere consent of parties, when the sale mentions that the slave has been sold and delivered, or when the buyer is already in possession under another title. The plaintiff's pretended purchase has none of these requisites, and any one of them at least would be indispensable to give effect to this sale against third parties. *Louisiana Code,* 2454. 6 *Martin,* 4102. 12 *Martin,* 254. 3 *Martin, N. S.* 107. These decisions were made under *article 28, page 350 of the Civil Code,* which is identical with *article 2454 of the Louisiana Code.*

6. A difference exists on this subject between slaves and lands. "The law considers the tradition of immoveables, as always accompanying the public act by which it is transferred." *Louisiana Code,* 2455. *Civil Code, articles 29 and 30, p.* 350. 3 *Martin N. S.* 107.

7. But this feigned delivery will not be supposed to take place when there exists a legal obstacle; as, for instance, when the land has been attached, or when it is held and possessed by a third person, under an adverse title. 3 *Louisiana Reports,* 183. *Pothier, Contrat de Vente, No.* 318.

8. In such a case as the foregoing, therefore, the vendee is only subrogated to the rights of the vendor, and the possessor may resist his claim by any title that would be valid against the vendor.

9. Gardner was properly called in warranty by the defendants. *Code of Practice,* 378. 6 *Martin N. S.,* 391. 6 *Ibid.* 463.

*Knox,* for Gardner, called in warranty.

*Mathews, J.,* delivered the opinion of the court.

In this case, the plaintiff sues *to recover* from the defendants, certain tracts of land and their appurtenances, as described in his petition; and also a number of slaves and their increase, therein named. Judgment was rendered for

the defendants, in the court below, from which the plaintiff appealed.

The cause was submitted to a jury, and on their verdict, the judgment of the court *a quo* was based.

The facts of the case are obscure and hidden, as generally happens where there exists a want of good faith and fair dealing in the parties concerned in a contract.

The evidence shows that the defendants, some time in 1832, made simulated sales of the premises in question, to one Phineas Gardner, for the purpose of obtaining, through his agency, a larger amount of stock in the Union Bank of Louisiana, than they could otherwise have done, according to the provisions of the charter. Thus it is seen that the first act giving rise to the present dispute, was done *in fraudem legis*. Not long after these sales, the purchaser made two acts under private signature, and delivered them to his vendors, acknowledging the simulation of the sales, and that the pretended price had been refunded to him. Gardner, at the time of purchasing was in the employment of the sellers, and resided on one of the tracts of land, as their overseer or manager. There seems to have been two acts of sale executed by the defendants to him; one dated on the 28th of July, and the other on the 11th of September, 1832, and the acts under private signature, have reference to both deeds of sale, but were not recorded until after the sale by Gardner to the plaintiff. Their character is disputed, whether they be counter-letters or re-conveyances. The act of sale from Gardner to Wells, is authentic, and made in due form, and conveys all the right which the vendor derived from the defendants.

The main question on which the decision of the case must turn, is, whether the plaintiff knew at the time he purchased from Gardner, the defects of the title under which the latter held from the defendants, viz: that the contract was simulated and had been rescinded, or was liable to be rescinded in consequence of subsequent agreements between the parties. This question is one of fact, on which the jury had a right to pass; and whether they considered the private

*In an action by a vendee against the vendors of his vendor, who are in possession, and claim the contested premises as the original owners; alleging that the sale by them to the plaintiff's vendor was simulated, and had been rescinded and re-conveyed, as appeared by two counter-letters: Held, that the question was, whether the plaintiff knew at the time he purchased, of the defects of the seller's title, and that it was simulated, or had been rescinded.*

*The question of the buyer's knowledge of the defects in his vendor's title, as that the latter held the property by a simulated sale, is one of fact, which the jury has a right to decide, from all the evidence of the case.*

The principle is established and settled, that the first vendor has a right to avail himself of a counter-letter in a simulated sale, and recover back his property. His case is more favorable, in relation to the person who purchased from his vendee, when he is defendant, and in possession.

acts between Gardner and his vendors, as a rescission of their contracts, or as containing a promise to re-convey, having the effect of counter-letters, is immaterial and unimportant in relation to the correctness of their verdict, provided they believed those facts to have been within the knowledge of the plaintiff, at the time of his purchase; for, if he had this knowledge, his situation before the court is no better than that of Gardner would be, were he plaintiff in this suit. The right of a vendor to avail himself of a counter-letter, in a simulated sale, and recover back his property, has been considered an established doctrine in our jurisprudence, ever since the decision of the case of *Griffin's executors* vs. *Lopez, 5 Martin,* 145. But the present case is more favorable to the persons claiming the benefit of the counter-letters; they being defendants, and in possession of the property. Whether the facts of the simulation of the sales from the defendants to Gardner, and the existence of a written agreement on his part, to re-convey to them, were known to the plaintiff, at the time he bought from the vendee, the evidence of the case does not clearly show; but the whole of the testimony taken together, we think, authorised the jury to infer that the plaintiff was conusant of the simulation and nullity of the contract by which the seller to him acquired this pretended title from the defendants.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed with costs, &c.