No. 88.—M. M. CALDERWOOD, Executrix, *v.* WILLIAM CALDERWOOD et als.

The price, the thing and the consent are essential elements of the *vente a remere* as well as of an unconditional sale.

The right of redemption constitutes a resolutory and not a suspensive condition, and the purchaser, therefore, becomes at once proprietor, and can exercise all the rights of property, including the right of disposition.

The consent, which is the essence of the contract of sale, consists in the concurrence of the vendor's volition to sell a particular thing for a particular price and of the vendee to purchase the same for the same price.

When, therefore, J. C. made a contract with W. C. in the form of a sale of lands, but by a counter letter of even date it appeared (1) that the real intent of the parties was to secure the payment of a debt which remained unextinguished; (2), that the amount of the nominal price over and above this debt was not serious; (3), that the vendee, so-called, was not invested with the right of disposition; and (4), that there was really no consent of J. C. to sell or of W. C. to buy. Held—That the effect of the two instruments together was to constitute an antichresis, and not a *vente a remere.*

In the absence of the stipulation respecting interest permitted by R. C. C. 3180, the disposition of the revenues of the pledged immovable is governed by article 3176.

Parol evidence is inadmissible against or beyond what is contained in the acts, and in regard to what may have been said before, at the time of or after their execution.

Property in litigation can not be alienated to the prejudice of the claimant.

APPEAL from the Fourteenth Judicial District Court, parish of Ouachita. *Ray, J. Stubbs & Cobb*, for plaintiff and appellee. *Garrett & Garrett*, for defendants, appellants.

WYLY, J. On the twenty-eighth of May, 1866, John Calderwood made a contract in the form of a sale with his brother, William Calderwood, in reference to certain stores and other property in Monroe, and at the same time a counter letter was executed and signed by them in order "to certify and explain the true intent and object of the parties to said act of sale, to wit: whereas, John Calderwood is indebted unto William Calderwood in the sum of twenty-four hundred and seventy dollars in United States treasury notes for services; now, therefore, the aforesaid sale and transfer is made to secure and guarantee the payment of said sum of money. And the said William Calderwood does hereby obligate himself not to sell any

part of said above described property without the consent of John Calderwood, and that when any part of said property shall have been sold, the price to the extent of twenty-four hundred and seventy dollars shall be retained by said William Calderwood, and the remainder shall be paid or turned over to John Calderwood, his heirs or assigns, provided the said John Calderwood shall first return to William Calderwood, his heirs or executors, his note given for the credit portion of the price or secure him against the payment th r of. And the said William Calderwood does hereby further obligate himself, his heirs and executors, to retransfer unto John Calderwood, his heirs or assigns, or legal representatives, the property aforesaid whenever he, the said William Calderwood, shall have been paid the twenty-four hundred and seventy dollars, and that he will not mortgage or encumber said property to the prejudice of said John Calderwood, his heirs or legal representatives."

The plaintiff, the executrix and universal legatee of John Calderwood, sues to compel the retransfer of the property according to the stipulation of the counter letter, alleging that by the rents derived from said property since twenty-eighth of May, 1866, William Calderwood has received largely more than the amount for which the property was given to him in pledge.

The defendant, William Calderwood, denies that the contract was a pledge, but contends it was a sale, with the right of redemption—à vente a réméré; that as owner, the fruits or revenues belong to him, and he is not bound to reconvey the property until the repayment of the twenty-four hundred and seventy dollars as stipulated, which the plaintiff has failed to tender.

He sought by parol evidence to prove that this was the intention of the parties, and the court very properly rejected the evidence of the witnesses. Parol evidence will not be admitted against or beyond what is contained in the acts, nor on what may have been said before or at the time of making them or since. C. C. 2256. Looking beyond the mere form of the contract, we see in the counter letter the real intention of the parties. In that instrument we see that the creditor is put in possession of certain immovable property as a security for his debt, but he can not sell it or mortgage it. He is not invested with the right of disposition, which is the essence of the ownership of a thing. Use, usufruct and the right of disposition are the elements of perfect ownership. By the counter letter this right of disposition, which is *necessary* for a sale, remains in John Calderwood; it was not delegated to William Calderwood, because he could not *consent* to a sale to any one else; the consent had yet to be given by John Calderwood, notwithstanding the contract.

We do not see in the contract the obligation of the buyer to pay the

price as mentioned in the act of sale, to wit: the note for $4030; this was not a serious engagement according to the terms of the counter letter. It was not intended to be paid.

But the strongest position is, the contract wants the consent of the parties in relation to the sale itself. The essence of the contract of sale consists in the concurrence of the seller's will to sell a particular thing for a particular price, and of the buyer to buy it for that price; there can be no contract of sale if it appears, as in the counter letter, that the intention of the parties is neither to buy nor to sell, but rather to disguise another contract under the false appearance of the contract of sale. See Cushing's Translation of Pothier on Sales, pages 1, 11, 17, 22, 25.

The idea of a sale is utterly precluded if effect be given to that clause of the counter letter which says: "Whereas, John Calderwood *is indebted* unto William Calderwood in the sum of twenty-four hundred and seventy dollars in United States treasury notes for services. Now, therefore, the aforesaid sale and transfer is made *to secure and guarantee the payment of said sum of money.*"

It is also precluded if effect be given to the other clause, which says in substance the right to consent to a sale still remains in John Calderwood; it is not invested in William Calderwood. The ownership is not transferred if the right of disposition or the right freely to consent to a subsequent sale and to exercise it independently is not conveyed in the contract. Then when a sale shall have been effected on the consent of John Calderwood, by another clause of the counter letter William Calderwood is not to get the price, he is only to receive the amount due him by John Calderwood, to wit: $2470. Again, there is another stipulation precluding William Calderwood from encumbering the property and binding him to reconvey the paper title, the apparent title, to John Calderwood, his heirs or legal representatives, whenever he, William Calderwood, shall have been paid.

In every one of these leading stipulations of the counter letter the idea prevails that John Calderwood owns the property, and has put it in possession of William Calderwood merely to secure the debt subsisting in favor of the latter for $2470. Not one word is said in that instrument, in which is to be found the true intent and object of the parties, according to their express declaration, about the payment of the $4030 represented by the note of William Calderwood as part of the price. They refer to that note as a document to be given up when the real purpose of the contract shall have been accomplished, to wit: when William Calderwood is paid and the property is returned to John Calderwood. No hint or intimation is conveyed in the counter letter that William Calderwood is upon any contingency to become the true owner.

If the contract be a sale what is the use of talking about securing a subsisting debt of $2470 ? That being paid as part of the price, ceased to be a debt; by the sale the obligation would be discharged, which the sole purpose of the counter letter, it seems, was to preserve and to secure.

Looking to the instrument wherein the parties have reposed their true intention and object, we say there was neither an intention to buy nor to sell, but rather to disguise the contract of pledge under the false appearance of the contract of sale. It is the real, not the apparent, contract which is sought to be enforced and which should be enforced.

If there was no sale for want of the essential elements, there can not be a modified or conditional sale—a sale à réméré.

The price, the consent and the thing are just as essential in the vente à réméré as in an unconditional sale.

Authorities are not wanting in support of this position. Favard, verbo, "Faculté de Rachat," says: "The stipulation of the faculty of redemption in the contract of sale does not prevent the property or proprietorship of the thing from being transmitted in entirety to the purchaser. It is in this respect that the sale with the right of redemption differs from the contract of pledge or antichresis, which gives the pledgee only the possession of the thing pledged, and the right to reap the fruits and revenues until the termination of the pledge." Lahaye's Notes to Code Napoléon, article 1659. Dalloz on sale, No. 825, says: "The right of redemption constitutes a resolutory condition and not a suspensive. In consequence the purchaser becomes immediately proprietor. He can exercise all the rights of property. He can sell, subject to a resolution, in case the right of redemption be exercised. Until the exercise of the right of redemption it is the purchaser alone who can dispose of the property."

We have thus seen that the right of disposition or the proprietorship of the thing never passed out of John Calderwood; consequently the fruits and revenues thereof belong to his succession. William Calderwood holds the property, which is immovable, by a contract of pledge, disguised, however, under the form of a sale. It is an antichresis by which contract he acquires "the right of reaping the fruits or other revenues of the immovables to him given in pledge, on condition of deducting annually their proceeds from the interest, if any be due him, and afterwards from the principal of his debt." Revised Civil Code, article 3176.

The evidence shows that the rents and revenues derived by William Calderwood under this contract exceed the amount of his debt and interest, together with the taxes, necessary repairs and other charges paid by him. The debt for which the property was given in pledge

being thus discharged, the antichresis has terminated. The property should be returned to the owner, and the pledgee should be required also to restore the amount of the rents received by him in excess of the sum which he is entitled to retain as pledgee. "The fruits of the pledge are deemed to make a part of it, and therefore they remain, like the pledge, in the hands of the creditor, but he can not appropriate them to his own use; he is bound, on the contrary, to give an account of them to the debtor or to deduct them from what may be due to him." Revised Civil Code 3135.

It appears, however, that on the thirteenth day of February, 1869, William Calderwood sold the property involved in this suit to Mrs. F. A. Richardson, the other defendant herein, and she claims it in this controversy by virtue of said purchase.

From the evidence, we entirely concur with the district judge that that conveyance was collusive, fraudulent and simulated; that this pretended purchaser was merely interposed to defeat the plaintiff, who had already set up claim in court for the property, and had caused it to be sequestered. "The thing claimed as the property of the claimant can not be alienated pending the action so as to prejudice his right. If judgment be rendered for him, the sale is considered as the sale of another's property, and does not prevent him from being put in possession by virtue of such judgment." Revised Civil Code, art. 2453.

From the evidence, we are not able to determine the exact amount of fruits or revenues derived by William Calderwood from the property in excess of the amount he was entitled to receive under the contract of pledge. We think that he has undoubtedly received more than was sufficient to discharge his antichresis, and that the court a qua did not err in entering judgment for the property in favor of the plaintiff, and in reserving her right to claim in a separate action the fruits and revenues received by the pledgee in excess of the amount due under the contract of pledge.

It is therefore ordered that the judgment herein be affirmed, with costs. Revised Civil Code, articles 3133, 3152, 3176, 3177, 3178, 3179, 2439, 2464; 1 N. S. 417; Livingston v. Story, 11 Peters 377; 10 An. 691; 3 An. 252; 8 La. 14; 8 N. S. 136; 2 An. 265; 7 An. 579; 9 An. 278.

The Chief Justice was recused in this case.

## ON APPLICATION FOR REHEARING.

WYLY, J. Having decided that the contract was not a sale, but a pledge of immovable property, it follows that the owner of the thing owns the revenues thereof. The owner of the debt or claim owns the interest or fruits thereof. It is very true that by article 3180 R. C. C.,

the creditor and debtor in a pledge of immovables may agree that the fruits or revenues shall be compensated with the interest in whole or in part, and that "this covenant may be performed as every other not prohibited by law." But in the absence of such a covenant in the contract of pledge, shall we say that the owner of the thing shall not have its fruits? It was perfectly lawful for the creditor to agree that his debt shall not bear interest, the principal being secured by the pledge, but shall we say that he did so in the absence of a covenant to that effect? Because article 3180 permits the creditor and debtor in a pledge to stipulate that the revenues of the thing shall compensate or set off the interest, shall we say that the parties availed themselves of that privilege, in the absence of a clause to that effect in the contract of pledge? Persons are presumed to contract in reference to the law. The pledge of a movable is a pawn, the pledge of an immovable is an antichresis. R. C. C. 3135.

"The creditor acquires by this contract (antichresis) the right of reaping the fruits or revenues of the immovables to him given in pledge, on condition of deducting annually their proceeds from the interest, if any be due him, and afterwards from the principal of his debt." R. C. C. 3176. The contract being a pledge of immovables, is regulated by this article, in the absence of the stipulation or covenant permitted by article 3180. The law regulates the effect of a contract except in such cases as the same may be modified by the covenant of the parties under the law permitting the said modification. The parties have not modified the antichresis in the case before us by a covenant under article 3180, and we therefore conclude that it must be regulated by article 3176. We see no reason to grant a rehearing.

Rehearing refused.