107 So.2d 412

Radolph Kelly FEDD

v.

J. H. WHEELER.

No. 42554.

Dec. 15, 1958.

C. J. Bolin, Shreveport, R. H. Lee, Benton, C. J. Bolin, Jr., Shreveport, for plaintiff-appellant.

L. G. Campbell Bossier City, for defendant-appellee.

HAWTHORNE, Jusitce.

By notarial act dated June 6, 1941, the plaintiff, Mrs. Radolph Kelly Fedd, conveyed to the defendant, her uncle. J. H. Wheeler, 160 acres of land situated in Bossier and Webster parishes, which she had inherited from her father. The act recites a consideration of $150 cash and "other valuable considerations cash in hand paid". It is the contention of appellant Mrs. Fedd in this court that this instrument was actually an antichresis which did not pass title to the defendant Wheeler, and that it should be so declared. She seeks an accounting, and in a supplemental petition she asks for a money judgment for certain particular items of revenue, the proceeds from oil and gas leases and mineral sales made by Wheeler. The district court dismissed her suit at her cost, and she appealed.

There is only one question involved in this case: Is the instrument of June 6, 1941, an antichresis? In order to answer this question, we must first review some of the articles of the Civil Code dealing with the contract of antichresis.

There are two kinds of contracts of pledge, the pawn and the antichresis. The contract is an antichresis when the security given consists in immovables. Civil Code Arts. 3133, 3134, 3135. A creditor acquires by the contract of antichresis the right of reaping the fruits or other revenues of the immovable to him given in pledge on condition of deducting annually their proceeds

from the interest if any be due him and afterwards from the principal of his debt. Art. 3176. In such a case the creditor does not become the owner of the pledged immovable by failure of payment at the stated time, and any clause to the contrary is null, and in this case it is only lawful for him to sue the debtor in order to obtain a sentence against him and cause the object which has been put in his hands in pledge to be seized and sold. Art. 3179; see also Art. 3166. In sum, in an antichresis title does not pass to the creditor, although he is given possession of the immovable. Thus the fundamental difference between a sale of real property and an antichresis is that title to the property passes to the vendee in a sale but remains in the pledgor in an antichresis.

In 1939, before the execution of the deed, Mrs. Fedd borrowed $110 from the First National Bank in Plain Dealing, Bossier Parish, and gave her note secured by mortgage on the property here involved. Her uncle, J. H. Wheeler, signed this note as an accommodation endorser. Mrs. Fedd was unable to pay the interest on the note or the taxes which fell due on the property. Wheeler paid these taxes and the interest to renew or extend the note until June 15, 1941. In April of 1941 plaintiff's husband wrote a letter to Wheeler about the note which the bank was holding, asking Wheeler to try to get the bank to renew the note and stating: "If they don't we would like

for you to take it over and put it all in your name, in other words yours 'to have and to hold'." Later, in May of 1941, Mrs. Fedd wrote her uncle advising him that she and her husband had no money to pay the taxes on the property and saying: "* * * if you want the place, have the deeds fixed out & send them to me and I'll sign them. I'll deed the whole place over to you. We will pay you back with interest as we can." Evidently pursuant to this letter Wheeler had the cash deed prepared and sent it to Mrs. Fedd. She signed the deed before a notary on June 6, 1941, and returned the deed to Wheeler, expressing the hope in her accompanying letter that it would not be long until she and her husband could begin to repay him. Wheeler paid the balance due the bank, and the note and mortgage were cancelled.

Some four months after the property had been conveyed by the above instrument, Mrs. Fedd wrote to her uncle as follows:

"You do just as you think best about the place in general. If you have a good prospect to sell, and can get a reasonable price, sell it. You do just like you want to with it and it will be all O.K. by me. I realize that when I deeded it over to you, I was giving you the place until I could pay you back what you had been out on it. I will not bother you about it in any way unless you ask me about it. You do just as if I had nothing whatever to do with it."

The letters from which the above extracts were quoted were produced by Wheeler at the trial of the case and were offered in evidence.

At various times during the eight years succeeding the execution of the deed to Wheeler, he executed a number of oil and gas leases on the property and sold mineral rights thereunder. During this interval plaintiff made no attempt to repay her uncle any indebtedness, and never asked him to execute a deed to her covering the property.

Both Wheeler and Mrs. Fedd testified at the trial of the case. Wheeler admits that he told the plaintiff to deed the property to him if she could not keep up with the payments on her note, and that she could redeem it from him in two or three years if she wanted to. It is his contention that the transaction was a sale with the right of redemption.

During the trial Mrs. Fedd was asked whether she knew that a deed transferred ownership of property, and her testimony is as follows:

"A. I knew that.

"Q. You knew that when you signed the deed, didn't you? A. I knew that when I signed it and I had respect enough that my uncle would keep his bargain, keep his end of the bargain."

When she was asked "was that your intention that you be allowed to *buy* the place

back if you got the money?", she replied: "It certainly was." (Italics ours.) Further in her testimony we find the following:

"Q. You knew that if the taxes went unpaid the property would be sold for its taxes, did you not? A. Yes, sir.

"Q. You understood that? A. Yes, sir.

"Q. So that at the time you made this agreement that you have testified to, with Mr. Wheeler, you realized that if you did not do something else with the property it would either go for its taxes or the bank would foreclose the mortgage, isn't that a fact? A. Yes, I knew that * * *.

"Q. You knew you would lose it if you didn't do something about it? A. Yes, I knew I would lose it one way or the other.

"Q. So, as a matter of fact, your intention in deeding the property to Mr. Wheeler was to keep from losing it either to the State for taxes or to the bank on the mortgage, isn't that true? A. Yes.

"Q. And when you deeded it to Mr. Wheeler it was your understanding that when you got able to pay the amount of money he paid out, plus the taxes that he might pay in the intervening years, that he was to give you

a deed back to it, isn't that correct? A. That's right."

■ From the evidence adduced at this trial there is no conclusion that we can reach except that plaintiff and Wheeler were in full accord as to the type of transaction they were entering into, that there was a meeting of the minds between them, and that the instrument here involved was not an antichresis. It is evident to us that Mrs. Fedd and Wheeler intended that title to the property should pass to Wheeler, who according to plaintiff's own letters could sell the property or manage it in any way he saw fit. See Calderwood v. Calderwood, 23 La.Ann. 658. It may be that what the parties intended here was a sale with the right of redemption, and in such a case the purchaser is entitled to all rights possessed by the vendor. See Civil Code Arts. 2567, 2573, 2575.

Appellant here relies on Gautreaux v. Harang, 190 La. 1060, 183 So. 349, 352. That case is clearly inapposite here. There the instrument contained a stipulation that "this sale is made to secure a debt on said described property and that no Revenue Stamps are to be attached thereto". The court found in that case that the parties to the instrument intended to create and did create an antichresis. In that case this court pointed out: "In this case, we are not dealing with a cash sale, by any means, but with a plain, unambiguous pledge of an immovable as security for

the payment of a pre-existing mortgage indebtedness, an antichresis." In the instant case the instrument contains no stipulation whatever which would show that the parties intended the act in question, although in the form of a sale, to be an antichresis.

After the appeal was lodged in this court, J. H. Wheeler died, and by order of court his widow and children were substituted as parties defendant in this suit.

The judgment appealed from is affirmed.

FOURNET, J., absent.