## MRS. FELIX LEBLANC *v.* L. F. BOUCHEREAU.

Incapacitated persons, when seeking to be relieved from the effects of engagements contracted by them *in fraudem legis* are entitled to show the real nature of the transaction, and persons so incapacitated are not bound to produce a counter-letter, but may use parol evidence to invalidate the contract.

Where a contract was made, purporting to be a sale of a slave by a married woman, and it appeared that she retained possession of the slave for some time after the sale;—that the price was inadequate; that the sale was redeemable; that the very instrument itself showed that the price was not paid in presence of the notary or of the witnesses, although the stipulation was for a cash sale, and lastly, that the so-called vendee was the creditor of her husband—*Held :* That this was not in reality, any contract of sale between the parties. Redeemable sales unaccompanied by delivery of the thing sold, of which the considerations are inadequate, courts are bound to consider, without sufficient evidence to the contrary as contracts for which the thing nominally sold stands as security and nothing else.

In such a case as that just mentioned the married woman would be entitled to the value of the services of her slave from the moment that she afterwards became dispossessed by her nominal vendee.

APPEAL from the Second District Court of New Orleans, *Howell, J.,* presiding. *Johnston & Denis,* for plaintiff and appelllant. *Castera & Biron,* for defendant.

VOORHIES, J. The object of this suit on the part of the plaintiff, who is a married woman, is to obtain the cancellation of the sale of a slave, made by her to the defendant, a creditor of her husband. The ground assigned is that this was in reality a contract of suretyship prohibited by law, although it is clothed with the forms of a contract of sale, with right of redemption.

The defendant contends that, this being a case of simulation as between the parties, the plaintiff is not entitled to introduce parol evidence to invalidate the authentic instrument of transfer ; and that she must either produce a counter-letter or probe the conscience of her adversary.

It is to be remarked that this is not an action to annul a simulated conveyance ; but one to declare invalid a contract, in 'appearance legal and binding, but covering a violation of a prohibitory law. It is well settled that incapacitated persons, when seeking to be relieved from the effects of engagements, contracted by them in *fraudem legis,* are entitled to show the real nature of the transaction. "It is not," said the court, "a good answer to say that persons so incapacitated should take a counter-letter ; for, to admit this argument, would be to make them the victims of the weakness, which induced the law to throw its shield over them."—(*Thibodeau* v. *Herpin,* 5 A. 580, and authorities there quoted.)

The facts, from which the plaintiff endeavors to prove that the contract of sale was in reality one of suretyship for the debt of her husband, are the following, to wit: That she retained possession of the slave some

LEBANO
v.
BOUCHEREAU.

time after the sale; that the price was inadequate; that the sale was re-deemable; that it appears by the very instrument that the price was not paid in presence of the notary, or of the witnesses, although the stipula-tion was for a cash sale; and, lastly, that the defendant was the creditor of her husband.

As these facts are borne out by the record, we conclude that there was not in reality, any contract of sale between the parties. "Redeemable sales, unaccompanied by delivery of the thing sold, of which the consid-erations are inadequate, courts are bound to consider, without sufficient evidence to the contrary, as contracts for which the thing nominally sold stands as security and nothing else." *Collins* v. *Pellerin*, 5 An. 99; Trop-long, vente, ¿ 695; Merlin Rep. verbo Contrat Pignoratif.

The plaintiff never ceased to be the owner of the slave, and is, there-fore entitled to the value of his services from the moment that she after-wards became dispossed. These services are worth thirty-five dollars per month, as shown by the evidence; and begin to run from the 24th day of June, A. D. 1857.

It is, therefore, ordered and decreed, that the judgment of the District Court be avoided and reversed; and that the plaintiff do have judgment against the defendant for the slave *Jack*.

It is further ordered and decreed, that the sale of the 31st day of March, A. D. 1857, be cancelled and annulled; and that the plaintiff do recover of the defendant the monthly rent of thirty-five dollars, to be computed from the 24th day of June, 1857, A. D., until delivery of said slave by the said defendant to the said plaintiff, the defendant paying the costs in both courts.

DUFFEL, J., recused himself.