## No. 336.

### J. L. BAKER vs. J. B. SMITH.

1. Whilst it is true that, under our law and jurisprudence, a sale which stipulates a condition of redemption—*vente à réméré*—passes the ownership of the property to the purchaser, and that, upon making restitution of the price paid, the vendor becomes reinvested with title; yet this rule of law and judicial interpretation applies exclusively to cases in which the vendee obtains *actual* possession, and a *real* and *adequate* consideration has been paid by him.

2. In case the debtor of several debts receives information that his creditor has imputed what he has received to one of his debts specially, the debtor ceases to have the right to require the imputation to be made to a different debt. And when the debtor has opportunity afforded him of ascertaining that an imputation has thus been made, and does not avail himself of such opportunity to object thereto, and suffers a great length of time to pass without so doing, he will be precluded by his silence and tacit acquiescence from making complaint afterward.

APPEAL from the Second District Court, Parish of Bienville. *Watkins, J.*

---

*W. N. Richardson* and *L. K. Watkins* for Plaintiff and Appellee:

1. Fifteen clear days is a sufficient citation for a person living fifty miles from the court house. C. P. 180.

Baker vs. Smith.

2. If a person moves from a parish, he can be sued in the parish from which he moved within one year. 15 An. 533; C. P. 167.

3. Silence and acquiescence in accounts constitute an approval of them. 35 An. 778.

4. Contracts can not be avoided for error, unless it is caused by fraud, force or improper influence. 22 An. 14; 30 An. 494, *et seq.*

5. Paying part of a debt waives prescription as to the remainder. Act 78 of 1888 applies only to open accounts. Pothier, Vol. 1, p. 506 [666].

6. If a contract intended for a sale is decreed to be a mortgage, it secures the payment of the debt intended to be secured. 38 An. 155.

7. Where a planter owes for advances, and owes a mortgage debt, the crop which he delivers is to be credited on the supply account. 26 An. 651.

8. Admissions, etc., made in judicial proceedings bind those who make them, and can not afterward be denied by them. 29 An. 161.

9. A sale, with the right of redemption, is a complete transfer of the property; not only as between the original parties, but as to third persons. 23 An. 661; 29 An. 4; 28 An. 29; 30 An. 186, 966; 32 An. 784; 33 An. 1026; 35 An. 856; 38 An. 483, 39 An. 490; 32 An. 784.

10. The sale is perfect between the parties as soon as there is a price and a consent before delivery. C. C. 2456.

*J. C. Egan & Son,* for Defendant and Appellant.

The opinion of the court was delivered by

WATKINS, J.   Plaintiff seeks to obtain judgment upon an open, running account of the defendant of several years' standing, and on several promissory notes, one of which is secured by mortgage and vendor's lien.   His averments are, however, subject to the qualification that the two largest notes, aggregating in capital $2098.53, are subject to the credit of $2000, the amount of the purchase price of a certain tract of land, "unless the court should determine that the contract was not one of sale."

He also makes claim for the annual rent of the land thus acquired, at the rate of $200.   After unsuccessfully interposing some dilatory pleas, the defendant entered a plea of prescription, and subsequently filed an answer—original and supplemental.

The purport of his defences is, that the plaintiff had made an improper imputation of payments of certain crop proceeds that came into his hands; and that he should be allowed certain additional credits. Supplementary to the foregoing is the allegation of the defendant that plaintiff is not the owner of the land mentioned in the act of March 31, 1887, and that he does not owe him any rent therefor.

He also denies the consideration of the note of $87.50.

Baker vs. Smith.

On the trial, there was judgment sustaining the plaintiff's money demands (except that on the note last mentioned) and decreeing him *not* to be the owner of said land; but it also awarded defendant an additional credit of something more than $1000, as the value of certain machinery which is included in the alleged act of sale, the price of which had subsequently inured to the plaintiff's benefit by a separate and distinct contract.

From that judgment both parties have appealed, and the plaintiff has requested such an amendment thereof as will conform our decree to the prayer of his petition.

From this statement it is apparent that the determination of the *character* of the act that is alleged to be a sale by the plaintiff, and which is disavowed by the defendant, is the principal question for decision in the case. This question, however, arises in a collateral way—this being a personal and not a petitory action.

For, if it be a sale, and fully invested the plaintiff with complete ownership of the property, it is evident that the $2000 mentioned in the act as the price paid in cash was nothing more than the acknowledgment of that sum having been paid on the vendor's *existing* indebtedness to the vendee—that is to say, on the note of date July 30, 1883, for $1098.53, and the note of date February 28, 1884, for $1000. But if, on the other hand, the transaction was not a sale, but a *vente à remere* or a *pignorative* or innominate agreement of some kind, *other* than a sale, not absolutely and unequivocally passing the *fee* to the plaintiff as vendee, the latter would have his action on the original obligations of the defendant, but no valid claim for the rent of the land; and he would have to make restitution—on account, perhaps—for the price of the machinery sold.

Viewing the case in this light, this question must be determined first.

A fair synopsis of the argument relied upon by the plaintiff as a rule is as follows, to-wit:

That on the 31st day of March, 1887, the defendant executed an act under private signature, which recites that, for and in consideration of $2000 cash in hand paid, he granted, bargained and sold unto the plaintiff the tract of land described, to have and to hold, free from all incumbrance, and with full guarantee of title.

This act contains the further stipulation that the *vendor is to pay to the vendee* the sum of $400 on the 1st day of January, 1888, and a

like sum annually thereafter, for four additional years—said sums aggregating exactly $2000₵ Also the further provision that all revenues arising antecedent to the 1st of January, 1892, shall be the property of the vendee, and the duty of paying taxes is to be imposed upon the vendor.

It is evident to our minds that the act in question is not one of sale, pure and simple, transferring the *fee* to the plaintiff absolutely.

Upon its face there is evidence of it having been intended as a *vente à rêmêré*, the price having been apparently paid in cash, and the price that is stipulated to be paid in the future by the *vendor*, having the appearance of a condition of redemption.

But the proof is clear to the effect that plaintiff never obtained *actual* possession of the property, and it is equally clear that the defendant never paid the plaintiff the $2000 named as the purchase price, or any part thereof.

The contention of the plaintiff, however, is that the $2000 cash was intended to pay an ddischarge the two large notes *pro tanto*, but that through error and inadvertence the proper credits were not indorsed thereon; but this suit is founded, in part, upon those identical notes, as previously stated—in the alternative, it is true—and this is quite sufficient to raise a reasonable doubt in our minds with regard to the *seriousness* of such a payment having been *contemplated* by the defendant at all.

Under this view of the agreement defendant had no occasion to comply with his part of it by paying the plaintiff, as vendor, the $400 instalments, there being no need for the exercise of the stipulated condition of redemption.

In Howe, Executor, vs. Powell, 40 An. 308, this court had under examination a similar instrument, and of which the court said: "It has all the characteristics of a sale, but contains the pact of redemption. * * * It is evidently a sale with the faculty of redeeming, *vente à remise.*

"The text of the law, and the jurisprudence upon it, are to the effect that by such a sale the ownership passes to the purchaser, who, most of the time, is a mere money lender; but that, on payment to him of the amount mentioned in the act, he is divested of that ownership, which passes to the original vendor. In two late cases we had occasion to consider that matter to some extent—

Lawler & Huck vs. Cosgrove, 39 An. 488, and Davis vs. Citizens Bank, Ib. 523. Also, in Jackson vs. Lemlee, 35 An. 855.

"But the law and the jurisprudence only thus say, *when* the transaction is *really* a sale *à rémérê*—that is, where, among other requirements, *the price paid was adequate, i. e.*, in reasonable proportion to the true value of the property. Stewart vs. Buard, 23 An. 201.

"Hence it is that when the price is inadequate, and possession has not been delivered to the purchaser, but was retained by the vendor, it has uniformly been considered and held that the transaction was not a sale, but a mere security—indeed, a sort of *pignorative* contract, upon which the law looks with suspicion, for the protection of the embarrassed and unfortunate debtor against the rapacity of his ravenous creditor. Indeed, the settled doctrine of this court on this subject is that redeemable sales, unaccompanied by delivery of the thing sold,· of which the considerations are inadequate, will be treated by courts—without sufficient evidence to the contrary—as contracts for which the thing *nominally sold* stands as *security*, and nothing else. LeBlanc vs. Rouchereau, 16 An. 11; Collins vs. Pellerin, 5 An. 99; Miller vs. Shotwell, 38 An. 891; Ware vs. Morris, 23 An. 665."

Taking this to be the settled rule of construction in such cases—that a sale *à rémérê* amounts to a *security* and nothing more, in case the consideration is inadequate, or the price named is vile—and, for a much stronger reason, must *such* a sale be thus treated and considered in case there has been paid *no part* of the consideration that is expressed in the act.

But the act in question was specifically interpreted by the parties. themselves in 1888 and 1884—more than a year after the date of its execution—in that the *machinery* that was sold with the land, and which is specifically mentioned in the act, was sold by the *defendant* to one King, for something more than $1000, and King satisfied the purchase price by arranging for a credit of defendant with the plaintiff for $1000 upon his (defendant's) indebtedness—the proof showing that the defendant conducted the negotiations and fixed the price. This is altogether inconsistent with the idea of the plaintiff's title to the property—the machinery constituting, as it did, part of the realty by destination.

But, inasmuch as this is not a petitory action, and the question of

itle arises only incidentally for interpretation, our opinion can go no further than to declare that the act in question is *not* one of sale, and that the non-payment of the consideration of the price expressed leaves the defendant's notes in full vigor.

On other questions in the case little need be said.

The proof discloses that one of the two $1000 notes antedates the commencement of the account sued on, and that the other was executed shortly subsequent thereto. That the account was the ordinary plantation account the defendant kept with the plaintiff, a country merchant, which run uninterruptedly through the years 1886 and 1890, inclusively; and that in each of those years, amounts in cash, and proceeds of the sales of cotton produced on the land in question, were delivered by the defendant to the plaintiff, unaccompanied with any specific request that same should be applied to any particular portion of his indebtedness to him.

The proof further shows that while the defendant had not been furnished with stated accounts, showing the items of his debit and credit, he had frequently gone over the plaintiff's books with him and examined his account thereon—in part, if not in detail—and made no objection to the manner in which the imputation of payments had been made by the plaintiff, and this is such an acquiescence on the part of the defendant as will preclude him from urging objection at this late date.

The language of the code is:

" When a debtor of several debts has accepted a receipt, by which the creditor has imputed what he has received to one of his debts specially, the debtor can no longer require the imputation to be made to a different debt," etc.    R. C. C. 2165.

And, in interpreting this article, this court said in Robson & Allen vs. McKoin, 18 An. 544: "This long silence on the part of this defendant *implies his assent to the imputation of payment made by the plaintiffs* (italics ours) and he can not now require that the imputation should be changed."    Slaughter & Crosby vs. Milling, 15 An. 526.

We are of opinion that the defendant's demand that the credits on the account should be applied to his two notes, is without merit and was properly rejected; and, considering same as properly made, defendant's plea of three years' prescription lacks foundation, and was properly overruled by the district judge.

Notwithstanding we hold that the act shown in question *supra* was not one of sale *à rémèrè*, but a nude security, *apparently*, it does not follow that thus holding gives any support to the defendant's plea of prescription against the notes; on the contrary, it is clear and well settled that possession by a creditor of a pledge interrupts, and keeps suspended the current of prescription upon the debt it is intended to secure, so long as that possession continues. And, confessedly, the instrument in question had direct relation, of some sort, to defendant's notes, and hence prescription was suspended in respect to them also.

The note of $87.50 was given by defendant to plaintiff for the price of a horse, which was sold upon the expressed condition that if the note was not paid at maturity there was no sale, and the defendant was to pay hire of the horse.

While the defendant's title was thus suspended the horse died, and it is clear that the consideration of the note failed on that account.

The fact of King having consented and agreed to arrange for defendant a credit of $1000 on his indebtedness to the plaintiff, as part purchase price of the machinery above mentioned, and the plaintiff having given him no credit therefor, on any part of said indebtedness, it was proper for the judge *a quo* to make the allowance and the imputation of payment he did.

Under the evidence, which is somewhat desultory, we are of opinion that the amount of $150 which the court *a qua* allowed on the defendant's reconventional demand is proper and sufficient.

A careful review of the record and the law has satisfied us of the correctness of the conclusions of the court below.

Judgment affirmed.