Statement of the Casa
MONROE, J.
Plaintiff sues to cancel the inscription of an act purporting to be a vente & réméré of certain real estate, of which he claims ownership and possession, and to recover $275.50, with interest, alleging that the act in question was intended to operate merely as a mortgage, that the debt secured by it was paid within the time stipulated, and that defendant thereafter sold part of the property and appropriated the proceeds. Defendant alleges that the act in question was, in fact, a vente S. réméré; that the amount paid him by plaintiff fell short of that required to redeem the property, which therefore became his ; that he has expended $150 in taxes; and that all the owners of said property (referring to certain persons to whom he has made conveyances) should be made parties to this suit. And he prays that plaintiff’s demand be rejected, or, in the alternative, that he have judgment for the amount alleged to be due him, with interest.
The facts proved are as follows, to wit: In November, 1893, plaintiff, an ignorant, illiterate, unintelligent man, borrowed from his brother, the defendant, the sum of $200, and, to secure the same, executed an act, in the form of a vente a réméré of a tract of land upon which he had lived for many years, and has continued to live up to the present time, and which was worth, at that time, four or five times the amount borrowed; the same being described as the “N. W. % of S. 7, T. 11 S., R. 1 W., coiitaining 163.76 acres.” The act in question recites that the sale is made “with, and upon, the express understanding and agreement that, if, on, or before, the 1st day of December, 1896, the said vendor shall pay to the said vendee * * * the sum of $240, with interest thereon at the rate of 8 per cent, per annum from the 1st day of December, 1893, until paid, the said vendee binds himself * * * to retrocede * * * the said property,” etc.
Shortly before the expiration of the delay thus provided for, defendant, by computing interest at a usurious rate and changing for taxes said to have been paid on the property, made out that the amount due him was $340, which was paid by plaintiff, by means of a sale (executed by defendant, as the apparent holder of the title), to Theoville Le Blanc, of the south half of the quarter section in question, described as containing 81.88 acres, for $400, of which defendant received the $340 claimed by him, and from which latter ■ amount he made a new loan to plaintiff of $125, upon conditions which were agreed on, verbally; defendant testifying that the loan was to be repaid within a year, and plaintiff that it was to be paid at his convenience, the so-called vente a réméré to remain, in the meanwhile, undisturbed— defendant, apparently, relying on it as maintaining his title to the unsold portion of the land by way of security. In January, 1900, defendant sold to-I-I. A. Mauboules, for $100, five acres of said land, and, on March • 27, 1906, he, with his children and stepchildren, sold an additional five acres to the Louisiana Irrigation & Mill Company for $157.50, which amounts, it is conceded, inured, exclusively, to the defendant ; and, on the day last mentioned, he, and said parties, executed an act of partition whereby other portions of said land were conveyed, or attributed, as follows, viz.: to Cyril E. Sonnier, five acres; to Julie Eucarise Sonnier, wife of A. J. Mauboules, five acres to Leonie Leger, wife of Isaac I-I. Lyons, five *325 acres ; to Lea Leger, wife of Wm. Launsberry, five acres; to Jean Leger, Jr., five acres; and to Jean Leger (defendant) 30 acres. This act contains the recital:
“It is agreed and understood that the lands herein divided, known as the Michel Leger homestead; * * * that each one shall let Michel Leger live on said land and enjoy the rents and revenues thereof as long as he shall live.”
In the meanwhile — that is to say, some time, probably, in the year 1900 — plaintiff had made a demand on defendant for his property, and had tendered him the $125 last borrowed, with interest, and defendant had replied: “You owe me nothing. The land is mine, and does not belong to you,” — and had further told plaintiff that, if he would pay him (defendant) $700, he (defendant) would transfer the land to him. There also appears to have been executed by defendant, and delivered to plaintiff, in February, 1900, a document purporting to authorize plaintiff to remain on the land (the portion not sold to Le Blanc) so long as he might live, on condition that he should take care of the trees, defendant to pay the taxes, which document plaintiff, in 1901, caused to be recorded. It is shown that the land has been assessed as follows, to wit: in 1897, 1898, $4 an acre; in 1899, 1900, $5; in 1901, 1902, 1903, 1904, $10; and -in 1905, $8 — and that the total tax rate has been 16 mills. From the excerpts from the assessment rolls and from the tax receipts offered in evidence, it appears that defendant was assessed and paid taxes on land in section 7, T. 11 S., R. 1 W., during the years mentioned, as follows: in 1897, 1898, and 1899 on 80 acres; in 1900 on 75 acres; in 1901, 1902, 1903, 1904, 1905, on 66 acres— making a total of 645 acres, and a total tax of $103.20.
The learned judge of the district court held that the soi-disant vente a réméré was intended to operate merely as a mortgage, and that the debt secured by it was paid within the time stipulated, and he rendered judgment ordering the cancellation of its inscription from the parish records, and further, as follows: (1) Condemning defendant in the sum of $257.-50 (being the aggregate amount received by him for land sold to H. A. Mauboules and the Louisiana Irrigation & Mill Company), with interest; (2) reserving plaintiff’s right to sue for the recovery of the land held by the children and stepchildren of defendant, by virtue of the partition; (3) condemning plaintiff to pay defendant $125 (being the amount of the last loan made by the latter to the former), with interest as prayed for in defendant’s answer; (4) condemning plaintiff to pay defendant $46, in reimbursement of the taxes paid by the defendant on the land now in his possession and the title to which is cleared by the judgment; (5) directing that the amounts allowed the parties, respectively, set off each other, pro tanto; (6) condemning defendant to pay all costs.
Opinion.
Counsel for defendant devote a portion of their brief to the support of the contention that the judgment appealed from is ultra petitionem in holding that the vente k réméré was intended to operate as a mortgage; but they were probably misled by the transcript, which, as originally filed, omitted a portion of the petition, but which, with their approval, was afterwards corrected.
It is true that it is not specifically alleged that the property in question was, at the date of the transaction, worth greatly more than the price as stated in the act; but that fact is established by the testimony offered on behalf of defendant, to the effect that such land was assessed at that time at $4 an acre. The contract in question is therefore one of those to which the following language, heretofore used by this court, is strictly applicable, to wit:
“An act, purporting on its face to be a sale a réméré, is not translative of the ownership of the real estate to the purchaser, when it is *327 shown that the parties did not intend that it should so operate. Such sales, made for an inadequate consideration, and unaccompanied by delivery, will be treated, without sufficient evidence to the reverse, as contracts by which the thing nominally sold stands as security, and nothing more.” Howe, Extr., v. Powell et al., 40 La. Ann. 307, 4 South. 450; Marbury v. Colbert, 105 La. 467, 29 South. 871; Baker v. Smith, 44 La. Ann. 929, 11 South. 585; Leblanc v. Bouchereau, 16 La. Ann. 11; Collins v. Pellerin, 5 La. Ann. 99.
Even, however, were said contract entitled to be regarded as the vente h réméré provided for by the Civil Code, the redemption of the property was effected within the time stipulated therein, and its effect could not have been so extended, by verbal agreement, as to secure a loan, subsequently made by the vendee to the owner, or convert It into a consideration for a new sale. The contract having become of no effect, and defendant having thereafter sold portions of the property ■and appropriated the proceeds, he should be held to account therefor. It is manifest, also, that, quoad that portion of the property which was made the subject of the partition between the defendant and his children and stepchildren, and title to which purports to have been vested in the latter, plaintiff’s right of action was properly reserved, since the parties apparently interested are not before the court. It is said that interest should be allowed plaintiff on the price of the land sold to the irrigation company ($157.50) from March 27, 1906, instead of January 5, 1900, and that is, no doubt, true. But, upon the other hand, interest has been allowed on the price of the land sold to Mauboules ($100) from March.27, 1906, instead of from January 5, 1900; the judge, by error, having substituted one item for the other in considering the question of interest, so that, as the matter stands, plaintiff is allowed legal interest, to which he is not entitled, on $57.50 from January 5, 1900. Appellant also complains that the amount allowed him in reimbursement of the taxes paid is insufficient, and that he has not been awarded interest on such payments; and the complaint appears to be well founded. We find, from the assessment rolls, that defendant paid no taxes, after the sales, on the land sold by him; but we are of opinion that he is entitled to recover the taxes paid before the sales on the parcels sold to Mauboules and the irrigation company, though he is not entitled, to recover, in this suit, the taxes paid on the 30 acres attributed, in the partition, to his children. To arrive at the amount for which he should have judgment on this item, we therefore deduct from the total tax ($103.20) paid by him, as appears from the statement which precedes this opinion, the tax (at 16 mills) on 30 acres, for nine years, or $43.20, leaving as the amount due him $60, upon which he is entitled to interest at the rate of 5 per cent, per annum for the average time between the first and last payment, or, say, from May 15, 1902.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended, by reducing the interest allowed plaintiff to the extent of 5 per cent per annum on $57.50 from January 5, 1900, and by increasing the amount allowed defendant for taxes paid to $60, with interest thereon at 5 per cent, per annum from May 15,' 1902, and, as thus amended, that said judgment be affirmed, the plaintiff (appellee) to pay the cost of the appeal.