(52 South. 99.)

No. 17,993.

JOLIVET v. CHAVES et al.

In re JOLIVET.

(Feb. 28, 1910. Rehearing Denied April 11, 1910.)

*(Syllabus by the Court.)*

VENDOR AND PURCHASER (§ 233*)—BONA FIDE PURCHASER—RECORD.

Where an authentic act purporting to be a "sale with right of redemption" is placed of record, and the delay for redemption has passed without there being any evidence of record showing that the right of redemption had been exercised within the delay fixed, a person who has bought the property from the apparent vendee on the faith of the record will be protected in his purchase from an attack on his title by the apparent vendor on the ground that the act purporting to be "an act of sale with a right of redemption" was in reality only an act of mortgage securing a specific debt to the apparent vendee.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 233.*]

Action by Victorin Jolivet against Francesca Chaves and others. Judgment for plaintiff was reversed by the Court of Appeal, parish of Lafayette, and he applies for certiorari or writ of review. Affirmed.

John L. Kennedy, for plaintiff. Orther C. Mouton and Ralph W. Elliott, for defendants.

NICHOLLS, J. In his petition to the district court plaintiff averred: That he was the true and lawful owner of certain described property. That on the 17th day of February, 1886, he pledged said property to the commercial firm of Gerac Bros., a copartnership composed of Jean Gerac and Pierre Gerac, to secure pre-existing indebtedness to said firm amounting to the sum of $192.29. That said pledge was embodied and set forth in a certain act executed before Crow Girard, notary public, which, in form, purported to be a vente à rémére, and which was recorded in the recorder's office of this parish under No. 1,449, as would more fully appear by reference to a certified copy of said act attached. That said act was intended by the parties thereto merely as a contract of security or pledge, and that since the execution thereof petitioner had continuously remained in possession of the property pledged, and had each year since the date thereof turned over to the said Gerac Bros., and since their deaths, or to their legal representatives who were thereinafter named, the whole or a portion of the crops raised on the land pledged as aforesaid in settlement of petitioner's indebtedness to them. That petitioner believed, and so averred, that the value of the produce turned over to said Gerac Bros. or their legal representatives far exceeded in value the amount of petitioner's indebtedness to them, and that he was entitled to an acquittance therefor and the cancellation upon the records of the recorder's office of the act securing the same.

That John Gerac and Pierre Gerac, who composed the commercial firm of Gerac Bros., were both dead, and that Mrs. Francesca Chaves, widow of Pierre Gerac, as surviving widow in community with Pierre Gerac and Henry Gerac, Estelle Gerac, wife of Gustave Lacoste, Louise Gerac, a femme sole, Felix Gerac, and Robert Ivan Gerac, as the heirs of Jean Gerac and Pierre Gerac, had not only refused to grant petitioner an acquittance of receipt for the indebtedness to the firm of Gerac Bros. or to give any statement of the value of the produce turned over in settlement, but they had fraudulently and illegally slandered petitioner's title to the property hereinbefore described by claiming to be the owners of the same under and by virtue of the act of pledge, executed in the form of a redemption sale, No. 1,449 of the recorder's records, certified copy of which was attached, and causing to be inscribed on the records of the recorder's office an act of partition among themselves, wherein petitioner's property was assigned to Mrs. Ellen Gerac, wife of Rene Delhomme, as her

share of the property, as would more fully appear by reference to said act executed on May 30, 1908, and recorded under No. 37,232 in book Q 3, p. 37, a certified copy of which act was attached to the petition, and that the said Mrs. Ellen Gerac, wife of Rene Delhomme, had further slandered petitioner's title by executing, and causing to be inscribed on the records of said recorder's office, what purports to be a sale of petitioner's property to Louis Domongeaux, as would more fully appear by reference to said act recorded in conveyance book R 3, p. 167, a certified copy of which was attached. That said acts were executed and recorded, as aforesaid, in fraud of petitioner's rights and to his injury, and he was entitled to have the inscription of said acts canceled upon the records of the recorder's office, and to recover of the parties herein made defendants, jointly and in solido, the sum of $300 as damages, occasioned to him by the slander of his title, as aforesaid. That all the parties made defendant were residents of the parish of Lafayette, La. He prayed that Mrs. Francesca Chaves, widow of Pierre Gerac, Sr., Henry Gerac, Estelle Gerac, wife of Gustave Lacoste, and her said husband, to authorize and assist her, Louise Gerac, Ellen Gerac, wife of Rene Delhomme, and her said husband to authorize and assist her, Felix Gerac, Pierre Gerac, Luc Raoul Gerac, and Robert Ivan Gerac, and also the said Louis Domongeaux, be duly cited, and that he have judgment against said defendants, decreeing him to be the true and lawful owner of the property hereinbefore described, and canceling the inscription of the act of pledge or mortgage as registered under No. 1,449, in the recorder's office, in book X, p. 329, and also canceling the act of partition and erasing the inscription thereof, as registered under No. 37,232, in book Q 3, p. 37, in so far as said act affected petitioner's property, and also canceling the inscription of the pretended

act of sale to Louis Domongeaux, as registered in said office, under No. 37,685, in book R. 3, p. 167, and condemning said defendants, jointly and in solido, to pay to petitioner the full sum of $300 as damages as aforesaid, with legal interest on said sum from judicial demand until paid. He further prayed for all necessary orders, for costs, and for general relief.

Louis Domongeaux answered. After pleading the general issue, he admitted that he purchased the property described in plaintiff's petition by purchase, as alleged by plaintiff, but respondent denied specially that plaintiff was in possession of said property as owner at the date of said purchase, or at any time after February 17, 1886, the date of the sale and delivery thereof to Gerac Bros. by plaintiff. He averred: That in the act of sale, with the right of redemption, of February 17, 1886, by plaintiff to Gerac Bros., of the property herein claimed and referred to by plaintiff in his petition, said property was declared to have been delivered to the vendee, and the plaintiff was estopped from contradicting the fact of delivery thereof as against respondent, who acquired in good faith and for a valuable consideration, on the faith of the public record. That he purchased said property from Mrs. Ellen Gerac, wife of Rene Delhomme, duly assisted by her husband, on October 28, 1908, for the sum of $1,300 cash in hand paid with full warranty of title, and with subrogation to all her rights and actions of warranty against previous owners.

That the said Mrs. Ellen Gerac acquired said property in the partition made between her and Mrs. Francesca Chaves, widow Pierre Gerac, Sr., Henry Gerac, Mrs. Estelle Gerac, wife of Gustave Lacoste, Louise Gerac, a femme sole, Felix Gerac, Pierre Gerac, Luc Raoul Gerac, and Robert Ivan Gerac, the other defendants herein, on May 30, 1908, as alleged by plaintiff, with full warranty

of title, at the valuation and at the price of $1,120, and that said parties should be called in warranty to appear and defend this suit.

In view of the premises, respondent prayed that Mrs. Francesca Chaves, widow Pierre Gerac, Sr., Henry Gerac, Estelle Gerac, wife of Gustave Lacoste, and her said husband to assist and authorize her, Louise Gerac, Felix Gerac, Pierre Gerac, Mrs. Ellen Gerac, wife of Rene Delhomme, and her said husband to assist and authorize her, Luc Raoul Gerac, and Robert Ivan Gerac, residents of said parish, be called in warranty to appear and defend this suit, and, after due hearing, respondent have judgment recognizing him as the owner of the property herein claimed by plaintiff; that he be quieted in his title and possession, with all costs of court; and, should judgment be rendered against him, that he have judgment against the warrantors as rendered against him on the principal action, and for the sum of $1,300, with 5 per cent. per annum interest from October 28, 1908, with all costs of court, and for general relief, etc.

The other defendants answered. After pleading the general issue, they averred: That on February 17, 1886, plaintiff sold and delivered to Jean and Pierre Gerac, for an adequate price, the property described in plaintiff's petition, subject to a right of redemption, reserved by the plaintiff therein. That the plaintiff failed to exercise the equity of redemption by paying the price therefor and within the time fixed in said contract, and the said vendees thus became the irrevocable owners thereof. That the plaintiff herein was in possession of said property at said sale as a tenant of Jean and Pierre Gerac up to their death; and since then up to May 30, 1908, the date of the act of partition between respondent and Ellen Gerac, wife of Rene Delhomme, as a tenant of respondent and the said Ellen Gerac, who held said property as owners, as the surviving widow

of Pierre Gerac, and as the heirs of Pierre Gerac and Jean Gerac, and at the institution of said suit as the tenant of Ellen Gerac, who acquired it in said partition. That Jean and Pierre Gerac were at the date of said sale engaged in commercial business in this parish, and thereafter continued to make advances of goods and supplies to the plaintiff, who occupied said land and cultivated it as their tenant up to the death of Jean Gerac.

That Pierre Gerac continued in said business after the death of Jean Gerac, and he also made advances of goods and supplies to the plaintiff, who still occupied and cultivated said land as his tenant. That all payments made by the plaintiff out of his two-thirds of the proceeds of the cotton crop made on said land, if any, were for said advances. That respondents discontinued said business of Pierre Gerac after his death, and since then have only received from the plaintiff annually one-third of the proceeds of the cotton crop, made by said plaintiff on said land, as their tenant, save and except for the year 1908, when said plaintiff, for the first time and during his possession thereof as lessee, as aforesaid, attempted to change the nature of his possession by claiming to be the owner thereof, and refusing to pay Ellen Gerac, who acquired said land in said partition of May 30, 1908, as aforesaid, the one-third of the cotton crop made and cultivated thereon during the year 1908, and for which suit had been instituted against said plaintiff; and was then pending.

That the plaintiff herein could not, during his possession as lessee or tenant of respondent and of Ellen Gerac and husband, change the nature of that possession, and, having leased said property, as aforesaid, from respondent and their authors, the plaintiff was estopped from asserting title thereto. Respondents admitted that they were surviving widow of Pierre Gerac, Sr., and the heirs

of Pierre Gerac, as alleged by plaintiff. In view of the premises, respondents prayed that the title of Louis Domongeaux, as the vendee of Ellen Gerac, wife of Rene Delhomme, be recognized; that he be placed in possession and quieted therein with all costs; and, in the alternative, if judgment be rendered against the said Louis Domongeaux, that defendants be decreed to pay as warrantors only the sum at which Ellen Gerac obtained said property in said partition and for general relief.

The district court rendered judgment in favor of the plaintiff, but, on appeal to the Court of Appeal, that judgment was reversed. After an unsuccessful application for a rehearing, that judgment, under orders of this court, has been brought before it and is now before it for review. The Court of Appeal assigned the following reasons for its judgment:

"The first question to which our attention is directed by the appellant is the refusal of the trial judge to rule out all the parol evidence to show a different intent from that expressed in the act of sale, and to show that there was no money paid as the price of the sale as recited in the act.

"The objection was that plaintiff, having signed the authentic act attacked as a sale for a cash price and with delivery of possession, could not contradict the act by parol; second, that, having since the sale and up to the period of redemption worked the plantation (land) from Gerac Bros. and their legal representatives as lessee, cannot be permitted to change the status of his possession or to contradict defendant's title.

"The objection appears to us to be well founded. The act which the plaintiff characterizes as a pledge, in the form of a sale, with the right of redemption 'vente à rémére,' is authentic in form. On its face it evidences a sale with a full warranty, made for a cash consideration in hand paid, for which the vendor gives full acquittance. It is declared that the purchasers acknowledge delivery and possession of the property conveyed. The only condition imposed is the right of redemption stipulated in the following words:

" 'The condition of this sale is such that if the said vendor shall pay and reimburse unto said Gerac Freres (Gerac Bros.) the price hereinafter mentioned, of two hundred and two $29/100$ dollars ($202.29), before the first day of January, eighteen hundred and eighty-seven,

then this sale shall be null and void, otherwise, on failure to exercise his right of redemption, before said date, property shall be irrevocably vested in said Gerac Bros.'

"Here we have then a perfectly valid contract specially authorized under the law. Civ. Code, arts. 2566–2588. It is purely a sale, with the right of redemption, evidenced by an authentic act, with nothing upon its face to suggest that the parties to it had any other intention in making it than that therein expressed. The authentic act is full proof of the agreement contained in it against the contracting parties, and their heirs or assigns, unless it be declared and proved a forgery. Civ. Code, art. 2236.

"Parol evidence will not be admitted against or beyond what is contained in the act, nor on what may have been said before or at the time of making it or since. Civ. Code, art. 2275; Calderwood v. Calderwood, 23 La. Ann. 658, 659.

"Declaration of a party in an authentic act can be contradicted by parol testimony by such party only in cases of fraud, error, or violence. McRae v. Creditors, 16 La. Ann. 305, on page 307.

"The instant case does not fall within the exception. We conclude that the parol testimony was inadmissible to vary or contradict the written act, and it was therefore improperly considered in determining the issues herein. The testimony of the notary and of the plaintiff as to the intention of the parties to the act will not therefore be regarded here in passing on the contention of the plaintiff that the sale was not intended as a bona fide sale, but merely as a security for debt. In Lawler & Huck v. Cosgrove, 39 La. Ann. 488, 2 South. 34, the Supreme Court says:

" 'It is settled beyond the possibility of a doubt that a bona fide sale of property for a valuable consideration, coupled with the pact of redemption, transfers the ownership to the purchaser, under a condition suspensive as to the vendor, resolutory as to the vendee.' See authorities cited therein.

"The right of redemption constitutes a resolutory and not a suspensive condition as to the purchaser, and he therefore becomes at once proprietor, and can exercise all the rights of property, including the right of disposition. 23 La. Ann. 658.

"Whether a sale with right of redemption is a bona fide sale—that is, with an intention on the part of the vendor to sell, concurring with the intention on the part of the purchaser to buy, and it be made for a valuable consideration —are questions which, in the absence of literal or written proof to vary or explain the authentic act evidencing it, must depend upon the facts and circumstances of the case. The sale with right of redemption being a contract authorized and regulated by law, the burden of proof rests primarily on the vendor to show facts and circumstances tending to negative a bona fide sale. If it be shown that the sale was for an inadequate consideration and unaccompanied by de-

125 La.—30

livery of the thing sold, then the burden shifts to the vendee, for, without sufficient evidence to the contrary, such a sale will be treated as mere security for debt. Howe v. Powell, 40 La. Ann. 307, 4 South. 450; Baker v. Smith, 44 La. Ann. 925, 11 South. 585; Davis v. Kendall, 50 La. Ann. 1121, 24 South. 264; Marbury v. Colbert, 105 La. 467, 29 South. 871.

"The plaintiff has produced in evidence a receipt signed Gerac Freres (Gerac Bros.) appended to an account, dated February 18, 1886, of amount due by himself to Gerac Bros., as proof that the sale was intended to secure the amount due by himself to Gerac Bros. This receipt is written in French, and reads: 'Recu par une vente à réméré payable dans un an pour solde de tout compte a ce jour. [Signed] Gerac Freres.' (Received by a sale with right of redemption payable in one year in full settlement of all accounts up to this day.)

"This is not conclusive proof that the parties intended by the act a mere security, and not a bona fide sale with right of redemption; for a debtor may make a valid sale to his creditor in payment of his debt, stipulating the right of redemption, and, if he fails to pay the price in accordance with the terms of the contract, his right of redemption will be forfeited, and the title of the property will vest absolutely in the purchaser. Bevens v. Weill, 30 La. Ann. 185; Soulie v. Ranson, 29 La. Ann. 161; Keough v. Meyers & Co., 43 La. Ann. 952, 9 South. 913.

"The receipt shows that Gerac Bros. considered the account paid and extinguished by the sale or dation en paiement with right of redemption, and the proof is that, though the plaintiff continued to deal with them at their store for years, old account, so settled, never figured again on their books.

"Measured by the value of property of the vicinage at the time of the sale, the price paid was adequate. It was not a vile or grossly inadequate price held in jurisprudence as one of the indicia that the contract was intended as mere security for debt, though in the form of a sale. It but remains to consider the question of possession, and whether the plaintiff paid to Gerac Bros. the price stipulated within the delay fixed for the exercise of the right of redemption. The plaintiff alleges and testifies that he remained in possession of the land continuously after the sale, and worked and cultivated the same. The bare fact of possession is not disputed, but the nature of that possession is the point around which the controversy revolves.

"The defendants contend that the plaintiff remained in possession, not as owner, but as tenant or lessee of Gerac Bros., and, after their deaths, of their legal representatives. A careful reading and appreciation of the testimony bearing on this point fully supports their position. The plaintiff himself admits that, while at first he turned over all the cotton raised on the plantation, later he delivered one-third to Gerac Bros. and two-thirds came to him. When asked why, after the death of the Geracs, of Gerac Bros., he continued to give their representatives one-third and kept for himself two-thirds of the cotton, he answered: 'I followed the condition between me and Mr. Gerac. I followed the condition, although verbal.'

"This fully confirms the testimony of Henry Gerac, Pierre Gerac, Jr., and Mrs. Gustave Lacoste, children of Pierre Gerac, deceased, of Gerac Bros., that the plaintiff, during the lifetime of their father, worked the land now claimed by him as tenant, yielding annually one-third of the crop as rental.

"This act alone concludes the plaintiff in the absence of error or fraud, and establishes the nature of his possession as the possession of his vendees and their assigns. Leasing the property by the vendor after the time for redeeming it has passed, in the absence of error or fraud, estops him from asserting title thereto. Jackson v. Lemle et al., 35 La. Ann. 855. Here not only is there no error or fraud alleged, much less proven, but the plaintiff himself frankly admits, under oath, that he continued to give one-third of the crop raised on the land to the widow and usufructuary in accordance with the verbal condition or agreement between himself and Mr. Gerac, his vendee. He is therefore estopped from asserting title to the land, or, at least, from denying the possession of his vendees through him. As to the payment of the price, the plaintiff does not assert positively that he has paid it, but avers that he delivered all the cotton made on the land to Gerac Bros. during a number of years, and he believes that the value thereof far exceeded the price of the property which he was to return to redeem it. The proof of the record is that the plaintiff continued to deal with Gerac Bros. and to receive advances on the crop from them, and that his share of the proceeds of the cotton delivered to Gerac Bros., was applied to the payment of the price for the redemption of the property. 35 La. Ann. 855.

"We consider the evidence conclusive on this point, but, even if it were not, the result would be the same, for the burden of proof is upon the plaintiff to show the payment within the delay fixed, and in this he has signally failed. We have carefully considered every phase of this case, because somewhat loath to disturb the judgment appealed from, which means much to the plaintiff, an aged negro, tottering to the grave. Our appreciation of the law and the facts of the case point unerringly, we think, to the conclusion that the judgment below is erroneous, and must be reversed.

"For the foregoing reasons, it is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and it is now ordered and decreed that the plaintiff's demand be rejected in its entirety, at his costs in both courts, and the defendant Louis Domongeaux be, and he is hereby, recognized and declared to be the true owner of the land in controversy fully described in the pleadings, and he is hereby quieted in the title and possession thereof."

Plaintiff makes a strong showing in the brief filed in his behalf in respect to the position taken by him in this case that the act, purporting to be a vente à réméré, was, in fact, intended as an act passed to secure payment of a debt due by the party named as vendor to the party appearing as vendee therein, and not an absolute sale. While the price declared in the act cannot be said to have been a "vile" price (that is, one not serious), we think it was below the real and actual value at the time of the act of the property transferred. The plaintiff has always remained in actual physical possession of the property since the so-called act of sale. Defendants urge that, although plaintiff has been in the physical possession of the property since the act of the 17th day of February, 1886, his status has always been that of a tenant. There is no direct evidence that the relation of landlord and tenant existed between plaintiff and declared vendee. No one swears to an actual knowledge of such fact. The evidence of such a relation is merely argued upon, presumptively based on, the fact that several years after the act was passed the plaintiff consented to receive one-third of the products of the farm, while the Geracs received two-thirds, which is the usual agreement as to the consideration for a lease between a tenant working land on shares and the owner. The testimony shows that plaintiff shipped for several years to the Geracs the whole of the crop raised on the land, to be by them sold, and the proceeds of the same applied, so plaintiff testifies, to the extinguishment of his indebtedness.

If this be true, it would appear that, if the plaintiff ever occupied the position of a tenant of the Geracs, he became so, not contemporaneously with the passing of the act, but at a later period, by some subsequent agreement. If in point of fact the contract of the 17th of February, 1886, evidenced original-ly a contract of security for money due and not a contract of sale, the ownership of the property remained after the act in the plaintiff, and the title could be transferred or shifted only by written evidence, and not by parol proof of a verbal lease of the property as between the parties. The rule is that "once a mortgage, always a mortgage." That is, an act of mortgage cannot be converted into an act transferring ownership unless and until a subsequent contract to that effect be made between the parties, conforming in all essential features to the requirements of the law for a contract of that character.

After the passing of the contract of February 17, 1886, the Geracs dealt at their store with the plaintiff, and the latter appears to have become indebted to them in a large amount for goods, wares, and merchandise sold him, later than that date, distinct and separate from the debt to secure which the act of February 17th was passed. For this later debt Jolivet executed his note. The act of mortgage did not extend to nor cover that debt; it covering only the specific debt existing when the act was passed. We think it was to this last debt that plaintiff referred when he said that he consented that two-thirds of the product of the crop, which were retained by the Geracs, might be imputed to it. We do not think that the plaintiff ever admitted that those two-thirds were retained by them by reason of their being his lessors of the property on which the crops were produced. The Geracs have never made a settlement between them and plaintiff further than to get the latter to recognize an indebtedness due by him to them to the amount of the note.

The property was assessed for taxation in the name of the plaintiff for the years 1887, 1888, and 1889, and in the name of the Geracs for the years 1890 to 1902. In 1902 it was again assessed in the name of the

plaintiff. In the year 1908 the plaintiff refused to deliver to Mrs. Delhomme one-third of the crop, and she brought suit to recover it in the justice's court. That suit is still pending. Plaintiff then brought the present suit (November 13, 1908). On October 28, 1908, Mrs. Delhomme sold the property to Louis Domongeaux. It appears that in 1897 (a short time before his death) Mr. Gerac desired to sell this land to a Mr. Arceneaux, and the latter, having been advised that, in order to avoid a lawsuit, the signature of the plaintiff would have to be obtained, so informed Mr. Gerac, who stated that he knew this and would attend to it, but never did, and that he died three or four months after.

Plaintiff alleges in his pleadings that the act relied on as a sale did not conform to the intention of the parties, and he demands substantially a reformation of the contract so as to make matters conform to "the contract and to make matters take their actual shape." The Court of Appeal was of the opinion that parol evidence was not admissible for that purpose in the absence of an express charge of fraud, but we think the court carried the rule on that subject too far.

In Peugh v. Davis, 96 U. S. 332, 24 L. Ed. 775, the Supreme Court of the United States used the following language:

"It is established doctrine that a court of equity will treat a deed absolute in form as a mortgage when it is executed as security for a loan of money. That court looks beyond the terms of the instrument to the real transaction, and when that is shown to be one of security, and not of sale, it will give effect to the actual control of the parties. As the equity upon which the court acts in such cases arises from the real character of the transaction, any evidence, written or oral, tending to show this, is admissible. The rule which excludes parol testimony to contradict or vary a written instrument has reference to the language used by the parties. That cannot be qualified or varied from its natural import, but must speak for itself. The rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument. Thus it may be shown that a deed was made to defraud creditors or to give a preference or to secure a loan or for any other

object not apparent on its face. The object of parties in such cases will be considered by a court of equity. It constitutes a ground for the exercise of its jurisdiction, which will always be asserted to prevent fraud or oppression and to promote justice." Hughes v. Edwards, 9 Wheat. 489, 6 L. Ed. 142; Russell v. Southard, 12 How. 139, 13 L. Ed. 927; Taylor v. Luther, 2 Sumn. 228, Fed. Cas. No. 13,796; Pierce v. Robinson, 13 Cal. 116.

"A subsequent release of the equity of redemption may undoubtedly be made to the mortgagee. There is nothing in the policy of the law which forbids the transfer to him of the debtor's interest. The transaction will, however, be closely scrutinized so as to prevent any oppression of the debtor. Especially is this necessary, as was said on one occasion by this court, when the creditor has shown himself ready and skillful to take advantage of the necessities of the borrower. Russell v. Southard, supra. Without citing the authorities, it may be stated as conclusions from them that a release to the mortgagee will not be inferred from equivocal circumstances and loose expressions. It must appear by a writing importing in terms a transfer of the mortgagor's interest, or such facts must be shown as will operate to estop him from asserting any interest in the premises. The release must also be for an adequate consideration; that is to say, it must be for a consideration which would be deemed reasonable if the transaction were between other parties dealing in similar property in its vicinity. Any marked undervaluation of the property in price paid will vitiate the proceeding."

The same views, even more forcibly expressed, were announced in Brick v. Brick, 98 U. S. 514, 25 L. Ed. 256. Counsel refer the court to 27 Cyc. pp. 1023, 1024; to 20 Am. & Eng. Ency. of Law (2d Ed.) p. 953; and counsel refers the court to 29 Id. (2d Ed.) p. 847; to 10 Current Law, p. 859; to Leger v. Leger, 118 La. 322, 42 South. 951; Franklin v. Sewell, 110 La. 294, 34 South. 448; Baker v. Smith, 44 La. Ann. 925, 11 South 585; Marbury v. Colbert, 105 La. 467, 29 South. 871, and authorities; 7 Current Law, p. 1830; also Rion v. Reeves, 122 La. 650, 48 South. 138; Collins v. Pellerin, 5 La. Ann. 99; Le Blanc v. Bouchereau, 16 La. Ann. 11; Crozier v. Ragan, 38 La. Ann. 154; Ware v. Morris, 23 La. Ann. 665; Parmer v. Mangham, 31 La. Ann. 348; Howe v. Powell, 40 La. Ann. 307, 4 South. 450. I personally am of the opinion that the act of February 17, 1886, was not what it purports to be (a sale with

power of redemption), but was intended to evidence a security for a specific debt; that it did not convey the ownership of the property declared therein to be transferred; but that the ownership of the same remained in Jolivet, and it still remains in him. I am also of the opinion that the relation of landlord and tenant between the plaintiff and the Geracs has never existed. The record does not satisfactorily show the state of the accounts between the plaintiff and the Geracs, and it would be impossible for us to fix by it the situation of the parties as creditors and debtor. There is a feature of this case which has been passed by without much comment. It is how far the decision in the case is to be affected by the rights resulting from the sale of this property by Mrs. Delhomme to Louis Domongeaux on October 28, 1908. The act of February 17, 1886, was, on its face, an act of sale, with power of redemption. It was recorded as such. Such a contract is recognized in law as a valid contract. The public had a right to act with it on the faith of the record. The attorney of the plaintiff testified that shortly before or shortly after Domongeaux bought the property from Mr. Delhomme (he did not know which) he met Domongeaux and spoke to him of Jolivet's claims to the property, and that he said he knew all about it, and had taken an indemnity bond to fully protect him, from which he argues, that Domongeaux was not a purchaser in good faith. Domongeaux purchased the property from Mrs. Delhomme under an act of sale with full warranty. The act of the 17th of February, 1886, purporting to be an act of sale recognizing and reciting that possession of the property, had been delivered to the Geracs. It is not claimed that in point of fact Domongeaux knew of the actual relations between the Geracs and the plaintiff, or had heard of any admissions made by Gerac, Sr., before his death.

We are of the opinion that the act of the 17th of February, 1886, purporting, on its face, by authentic act, to be a sale with right of redemption, having been recorded as such, and no redemption of the property appearing on the records, although the delay for redemption had expired, Louis Domongeaux who bought the property from Mrs. Delhomme on the faith of the record is protected in his purchase from an attack on his title on the ground that the act purporting to be a sale with right of redemption was, in fact, an act of mortgage or security, securing a specific debt of the apparent vendor to the declared vendee in that act.

We are of the opinion that the judgment of the Court of Appeal brought up for review is correct, and it is hereby affirmed.

BREAUX, C. J., and LAND, MONROE, and PROVOSTY, JJ., concur.