Maxwell vs. Roach.

Rehearing refused.

No. 13,823.

F. L. MAXWELL vs. SUSAN ROACH ET ALS.

SYLLABUS.

1. Under the Constitution of 1879, it was incompetent for the owner of a homestead to convey the same to his creditor, either to secure, or to pay, an ante cedent debt. And where it appears that such a conveyance, of such property, in the form of a sale with a right of redemption, for cash, was mainly intended to secure, and, ultimately, and in case of forfeiture of such right, to pay, such debt, the transaction will be set aside.

2. The provision of said Constitution, denouncing as invalid any renunciation or waiver of homestead rights or exemptions, was a rule of public order, and where it appears that, as to its principal consideration, a contract has been entered into in violation of such rule, the contract will not be saved by a valid consideration of minor importance.

A PPEAL from the Ninth Judicial District, Parish of Madison— *Ransdell, J.*

*William M. Murphy,* for Plaintiff, Appellee.

*Wade R. Young,* for Defendants, Appellants.

The opinion of the court was delivered by MONROE J.

On application for rehearing by BLANCHARD, J.

MONROE, J. The case presented by this record is as follows, to-wit:

In 1891, F. L. Maxwell & Co., composed of F. L. Maxwell and F. P.

Moore, were doing business as merchants in the parish of Madison; and there were, at that time, living in the parish, Susan Roach and her four sons, Bradford, Bryant, Spencer and Walter, issue of her marriage with Spencer Roach, deceased. This family resided upon a small place, of a little more than thirty acres, which had been acquired by the deceased husband and father as community property, and, after his death, had been registered by the widow and mother as a homestead. During the year 1891, Maxwell & Co. began making advances of supplies, etc., to Susan Roach, with the understanding that they were to be regarded as being made to her sons, as well. It is quite certain, however, that Spencer and Walter were then minors, and it is not unlikely that Bradford and Bryant were also minors in 1891, though they had attained their majority at the date of the transaction out of which this litigation has arisen. In the spring of 1894, the Roaches, who are defendants in this case, needed a mule, and applied to Maxwell & Co. for the money with which to purchase it. They were then indebted to that firm, however, to the extent of some hundreds of dollars, for advances made during the three preceding years, and they were told by Mr. Moore, "that Mr. Maxwell objected to furnish further money until this old balance was arranged." And Mr. Moore, it seems, consulted the legal adviser of the firm, and, being informed that the homestead could not be mortgaged, and that it would be necessary, in order to utilize it for the purpose in contemplation, to make a sale, he explained the situation to Susan Roach, and told her that, in order to effect a sale, it would be necessary that the two minors, Spencer and Walter (the other two having by that time attained majority), should be emancipated; to which she consented, and the two minors were, accordingly, emancipated, by a judgment of the District Court, March 19, 1894. Thereafter, upon March 22, 1894, they, that is to say, Susan Roach and her four sons, executed an act of sale of their homestead to Maxwell & Co. for the stipulated price of $554.97, of which, although the act recites that the sale was made for cash, as we understand the testimony, probably, four-fifths, or more, represented the old account, the inference being a fair one, though there is no direct testimony to that effect, that there was a balance which was represented either by cash or by a mule. This act contains a stipulation to the effect that the vendors shall have the right to redeem the property, up to January 1st, 1897, upon refunding the price, as stated therein, with interest, at 8% per annum.

Thereafter, in 1895, Moore sold his interest in the property to Max-

well, and the latter, claiming as sole owner, is the plaintiff in this suit. During the same year, 1895, Susan Roach, individually, and as tutrix, filed suit, in which she was joined by her major sons, attacking the transaction into which they had thus entered upon the grounds, as alleged by them, that the emancipation of the minors and the execution of the act of sale by them and the others were the results of a fraudulent deception, practiced on them by Maxwell & Co. by whom, as the plaintiffs alleged, they have been induced to believe that the act in question was merely an act of mortgage to secure the debt due to said Maxwell & Co. The suit thus instituted had, however, not been tried when the present suit was instituted, and it has been cumulated herewith as part of the defense hereto. The date fixed, in the act of sale referred to, for the redemption of the property having long since passed, F. L. Maxwell, upon December 12, 1900, brought the present action, alleging that no part of the price of said property had been refunded, and praying that he be decreed to be the owner thereof and put in possession, and that he have judgment against defendants, for rent at the rate of $150 per annum from January 1, 1897; or, in the alternative, that he be recognized as having a mortgage on said property, and that the same be sold to satisfy his claim. For answer, the defendants make the same attack upon the deed sued on that they had made in 1895, in the action brought by them, in fact, they make the petition filed in that suit part of the answer in this. And, upon the issues as thus made, the case was tried, with the result, that there was judgment for plaintiff decreeing him to be the owner of the property, and condemning the defendants, *in solido*, for rent, at the rate of $150 *per annum*, from January 1, 1897; from which judgment the defendants have appealed.

Neither of the sons of Susan Roach appeared upon the trial, to sustain, by their testimony, the charges of fraud which had been made by them, or on their behalf. In fact, the only witness who appeared for the defense was Susan Roach, who testified that she did not know when she was married, or when her children were born, or anything about the emancipation of the two minors. She does not, however, utter a syllable concerning the act of sale upon which the plaintiff sues, or intimate that there was any deception practiced upon her with regard to any portion of the transaction. It does appear that she is living on the place in controversy with her sons, and that the youngest son, with his wife, and a grandchild, live in the house with her. Upon the

other hand, the record contains the testimony of several respectable witnesses to the effect that the whole matter was fully explained to them all; that there was no fraud or deception practiced on them, and that they understood that they were making a sale such as the act signed by them witnesses, and we entertain no sort of doubt as to the truth of this testimony.

The question then is, was the transaction thus entered into legally possible? There can be no doubt that the property which was the subject thereof was a homestead, secured by the Constitution of the State to the defendant, Susan Roach, as the head of a family, even assuming that her adult sons were not to be considered for the purposes of that question, since two of her sons were then minors living at home. Wood vs. Perkins, *et als.,* 43 Ann. 347. But the organic law not only secures the homestead to the persons mentioned against attack from without, but is equally imperative and efficacious in securing it as against the acts of such persons themselves; the ordinances upon the subject being rules of public order which the beneficiaries are incompetent to waive. The language is:

"The homestead shall not be susceptible of mortgage, except for the purchase price, labor and material furnished for the building, repairing. or improving homestead; nor shall any renunciation or waiver of homestead rights or exemptions be valid. The right to sell any property which shall be recorded as a homestead shall be preserved, but no sale shall destroy or impair the rights of creditors therein." Constitution of 1879, Art. 222.

The prohibition as to mortgage is absolute, and contains no exceptions. And if it was incompetent to mortgage the homestead for money received at the time, *a fortiori* was it incompetent to mortgage it to secure an antecedent debt. And if it was incompetent to mortgage the homestead to secure an antecedent debt, *a multo fortiori* was it incompetent to give it in payment of such debt, or validity to agree to do so. And yet, from the testimony of Moore, it is evident that the purpose of the deed was, for the time being, to secure the amount which was due to his firm, and, ultimately, to obtain its payment by the delivery of the property; and, in so far as the acts, agreements and transactions of the parties, whether considered singly, or collectively, were influenced by that purpose, they were absolutely and incurably void and of no legal effect.

That a homestead may be sold there is no doubt; and, as sales of

other property may be made in different ways, so sales of homesteads may be made in different ways, but the transfer of property to a creditor to secure, or to pay, a pre-existing debt is not a sale, and no such disposition can be made of a homestead.

The only other question which the case presents, is, whether the instrument sued on should be maintained as a sale, by reason of the fact that there is said to be included in the nominal price the money necessary for the purchase of a mule? And this question, we think, must be answered in the negative. It has been shown that the amount stated in the act to be the price was not a price, but that the main consideration moving from the vendees to the vendors concerned a pre-existing debt due by the latter to the former. If, apart from that, there was a price for the property, it has not been disclosed by the evidence. And without a price there was no sale. And without a sale the plaintiffs could have acquired no right or title to the defendants' homestead. Even, however, had the amount of the money advanced for the purchase of the mule been disclosed, and had it been made to appear that the deed was executed in order to secure, or pay, an antecedent debt of $400, and to obtain $154.07 with which to buy a mule, we should not be prepared to hold that the defendants were thereby divested of their homestead, since it would, even then, appear that the contract, as to the principal consideration, had been entered into in violation of a rule of public order embodied in the organic law. From the view which we have thus expressed, upon the main question, it is evident that nothing need be said upon the subject of rent. But, if our conclusion upon the main question had been other than it is, we should have been at a loss to understand how the defendants could be held liable, *in solido,* for $150 per annum as *rent,* since there is not a syllable of testimony in the record either as to any agreement to pay rent, or as to the value of the use and occupancy of the land.

For these reasons, it is ordered, adjudged, and decreed, that the judgment appealed from be annulled, avoided and reversed, and that the demands of the plaintiff be rejected at his cost, without prejudice, however, to any claim that he may have against the defendants, or either of them, individually.

## ON APPLICATION FOR REHEARING.

BLANCHARD, J. In a very earnest application for rehearing counsel for plaintiff presents anew the cause he represents.

For the second time the case has had our most careful consideration, and we rise from its study with our convictions unshaken as to the correctness of the judgment of the court.

I. The contract of March 27, 1894, did not evidence a sale between the parties. It was, at most, a pignorative contract by which a debt was acknowledged and an attempt made to grant therefor security rights on land.

The apparent vendors remained in possession, not only during the period allowed for the redemption, but long afterwards, and this suit was not brought until more than three years after the redemptory right had expired. See Marbury vs. Colbert, 105 La. 467.

II. Under both Constitutions—that of 1879 and that of 1898—the benefit of the homestead exemption is extended to the surviving spouse.

The fact that the surviving spouse, as widow in community, is owner of one-half of the property constituting the homestead, does not destroy the homestead right. Ordinarily parties owning land in indivision, or rather a party owning an undivided interest in land, cannot claim the homestead exemption on the land thus held in common with others. But, by special direction of the Constitution, this does not apply to the surviving spouse.

Under the Constitution of 1879 the homestead exemption was required to be registered. In this instance the surviving spouse, shortly after the adoption of that Constitution, registered her homestead right. She was then "the head of a family" within the meaning of the Constitution; she was the same when in 1894 the contract under which plaintiff claims was executed; and she was still "the head of a family" at the time this suit was instituted and decided in the court below.

She not only, as surviving spouse in community, owned the undivided half of the tract of land whereon she resided as "the head of a family," but she enjoyed the usufruct of the other undivided half which belonged to her children, the issue of her marriage with her deceased husband, Spencer Roach.

The decisions cited by counsel for plaintiff, declaring the non-applicability of the homestead exemption to property held in indivision, preceded, in point of time, the adoption of the Constitution of 1879, wherein it is expressly declared the benefit of the exemption descends to the surviving spouse.

III. Since the contract of 1894 between these parties litigant is to

Maxwell vs. Reach.

be viewed as granting nothing beyond mortgage rights on the land, such mortgage was and is not exigible on the property, so long, at least, as the same remains the homestead of this surviving spouse and she continues to represent the conditions entitling her to the homestead exemption.

The homestead claim of the surviving spouse on community property, one-half of which she owns in indivision and the other half of which she enjoys the usufruct of, cannot be defeated by a seizure, under a judgment against them, of the undivided half of the property belonging to her children.

IV. The point is made in the application for rehearing that the defendants took an order of appeal only from that part of the judgment decreeing the property to belong to the plaintiff and gave appeal bond accordingly only to that extent. It is, therefore, insisted that the *moneyed* judgment against defendants for rents of the land must stand as unappealed from.

While the order of appeal is awkwardly drawn, and the bond of appeal quite equally so, we are able to make out of the two that a suspensive appeal was taken from that part of the judgment awarding plaintiff the ownership and possession of the land, and a devolutive appeal from the entire judgment.

V. Attention is called to the fact that the prayer of plaintiff's petition is to the effect that if the contract made with him in 1894 be held not to evidence a sale, it be held to evidence, at least, a mortgage, and for judgment accordingly.

Considering it a mortgage, it yet cannot have effect against the homestead right herein claimed, and, therefore, there can be no recognition of mortgage rights.

Eliminating the mortgage feature of it and its bearings on the homestead, can the court do as plaintiff asks, to-wit:—award him an ordinary moneyed judgment for the amount the evidence in the record shows defendants owe as the result of the transactions between the parties out of which grew the contract of 1894, which amount is $554.07? No; for the reason that it is only the homestead feature of the case which gives this court jurisdiction. We may pass upon the issues presented only in so far as it is necessary to adjudge the homestead question raised.

With that out of the way and leaving only a moneyed demand asserted by plaintiff against defendant, this court cannot take juris-

diction, for the amount is below its minimum jurisdictional limit. The decree of the court, however, reserves to plaintiff all rights in respect to such demands he may have.

Rehearing refused.