(86 South. 744)

No. 22696.

**CRUTCHFIELD et al. v. MOCH et al.**

(Nov. 3, 1920. Rehearing Denied Nov. 29, 1920.)

*(Syllabus by the Court.)*

**1. Real actions** &#9758;8(2)—**Petition to state a cause of action.**

A petition in a suit for the recovery of real estate discloses a cause of action when it alleges that the petitioners inherited the property from the former owner (their mother and grandmother); that defendants claim title under a so-called vente à rémeré, executed by her some 18 years prior to her death, during which period, and long after the recited delay for redemption had expired, she remained in actual possession of the property, which instrument on its face indicates that it was intended to witness a pignorative contract, and which property was acquired shortly afterwards, from the tax purchaser, by the wife of the grantee in said contract, but that no possession was taken or claimed thereunder until after the death of the grantor, some 18 years later.

**2. Mortgages** &#9758;144—**Relation of parties held to prevent grantee from acquiring rights antagonistic to those of the grantor.**

The relation of the grantee to the grantor, in the so-called vente à rémeré, thus described, was such that he could acquire no rights upon the subject therein dealt with antagonistic to those of the grantor.

**3. Husband and wife** &#9758;262(1)—**Property acquired in wife's name is presumed to be acquired for the community.**

Property acquired during the existence of the matrimonial community, though acquired in the name of the wife, is presumed to have been acquired for the community.

Provosty and O'Niell, JJ., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; R. D. Webb, Judge.

Suit by Moses Crutchfield and others against Marx Moch and others. Suit dismissed upon an exception of no cause of action, and plaintiffs appeal. Judgment reversed, exception overruled, and case remanded.

Edward Barnett, of Shreveport, for appellants.

Joseph H. Levy, of Shreveport, for appellees.

### Statement of the Case.

MONROE, C. J. This suit, having been dismissed upon an exception of no cause of action, is before this court on the appeal of the plaintiffs.

They allege that, as the sole heirs of Margaret Crutchfield, who died about 7 years since (prior to March 12, 1917, when the suit was instituted), they are the owners of the S. E. ¼ of S. E. ¼ of sec. 25, T. 17, R. 14, in the Parish of Caddo, the value of which exceeds $3,000, or, in the alternative, if it should be found that they are not all legitimate descendants, that certain of them who are named are the sole natural children of said Margaret, duly acknowledged, and that she left no legitimate descendants; that she acquired said land by purchase from the Vicksburg, Shreveport & Pacific Railroad Company on February 28, 1888; that Marx Moch and his wife, Dina Moch, are in physical possession thereof, without title or right, and refuse to surrender same; that on March 3, 1892, Margaret Crutchfield executed what purported to be an act of sale of said property to Marx Moch, with a right of redemption, within 10 years, on payment of $103.50, in equal installments of $51.75, on November 1, 1892, and November 1, 1893, with interest,

said indebtedness being further evidenced by two promissory notes, duly identified with said act, "which stipulation, of itself deprives the deed of the character of a sale with the right of redemption, because the right of redemption is an agreement, or paction, by which the vendor reserves to himself the power of taking back the thing sold by returning the price paid for it"; that the so-called sale, with right of redemption, was unaccompanied by delivery of the property, of which Margaret Crutchfield remained in possession until almost the time of her death; that such sales are, at best, contracts of security; and the inscription, on March 5, 1892, of the act here in question, "is prescribed by 10 years, and petitioners now specially plead the prescription of 10 years"; that, as appears from the conveyance records of Caddo Parish, Mrs. Dina Moch, wife of Marx Moch, acquired the property in question, from J. Henry Sheppard, on December 24, 1892, by an act of sale, without warranty, of whatever right Sheppard may have acquired at a tax sale; and, as appears from the same records, Sheppard acquired at tax sale on July 5, 1889; that said tax sale, and the sale by Sheppard to Mrs. Moch are illegal, and conveyed no title, for the reason that no possession was taken of the property; but, on the contrary, Margaret Crutchfield remained in possession "until near the time of her death, about 7 years since"; that any title acquired by Mrs. Moch would have inured to the benefit of the community between her and her husband, and that, whatever the character of the possession acquired by Marx Moch, in virtue of the so-called sale with right of redemption, inured to the benefit of Margaret Crutchfield. The conveyances, from the railroad company to Margaret Crutchfield (of February 28, 1888, recorded March 16, 1888), from the tax collector to Sheppard (of July 5, recorded July 19, 1889), from Margaret Crutchfield to Marx Moch (of March 3, recorded March 5, 1892), and from Sheppard to Dina Moch (December 23, recorded December 24, 1892), are annexed to and made part of plaintiff's petition. In the sale by the railroad company to Margaret Crutchfield all mineral rights are expressly reserved, and it is stipulated that the grantee, or grantees, "will not hold adversely, or permit any other power to hold adversely, to the grantor, * * * or to its assigns, or successors, any iron, coal or other mineral rights * * * or other things reserved to the grantor, * * * but will hold everything herein reserved to the grantor for the grantor, its assigns or successors, and for no other person or purpose whatever."

The act thus quoted is signed "Margaret Crutchfield, per Frank X Dinkins;" the power of attorney, authorizing Dinkins to sign appears to have been acknowledged before J. Henry Sheppard, notary; and the signature of Margaret Crutchfield is also represented by "X," from which we conclude that she was an ignorant woman, and the fact is disclosed in a supplemental petition that she was of the colored race, had been a slave, and claimed to have been married during the slavery period, so that in 1888 and thereafter, she must have been pretty well advanced in years, and may properly be referred to as an ignorant old negro woman, a fact of which it is as well to have a clear understanding.

The conveyance from Margaret Crutchfield to Marx Moch contains the ordinary language of a sale, with subrogation and warranty, after which and after a description of the property we find the following, to wit:

"It is agreed that this vendor shall have the right to redeem the property hereby sold, at any time within the period of ten years from the date hereof, on the payment to this vendee of the sum of $103.50, in equal payments of

$51.75, due and payable on November 1, 1892, and November 1, 1893, with 8 per cent. per annum interest from date. Said indebtedness being further evidenced by two notes of even date herewith and paraphed ne varietur by me, to identify same. * * * This sale is made for the consideration of the sum of $103.50 cash in hand paid, the receipt of which is hereby acknowledged."

The petition herein further alleges that there appears to have been filed of record, on April 14, 1915, an oil and gas lease and conveyance under which the Producers' Oil Company, a Texas corporation, claims to be the owner of the oil, gas, and other minerals in and under the land in question, but without any valid or legal right whatever.

The prayer is that "defendants" be cited, and that plaintiffs have judgment against Marx Moch and Dina Moch and Producers' Oil Company, recognizing said plaintiff to be the owner of the land in question, and reserving the right to sue for rents and revenues.

### Opinion.

[1] The contract between Margaret Crutchfield and Marx Moch falls well within the following statement as contained in an opinion of this court, to wit:

"Ruling.—Where a sale is made with the equity of redemption stipulated for and the vendor continues in possession of the property during the whole period allowed for the redemption, such a transaction will be regarded, on its face, not as a real sale but as a contract of security." Marbury v. Colbert, 105 La. 469, 29 South. 872.

The doctrine thus enunciated is well supported by previous decisions of this court, cited in the opinion, and is affirmed by many others, since handed down, and among them the following: Maxwell v. Roach, 106 La. 123, 30 South. 251; Leger v. Leger, 118 La. 322, 42 South. 951; Rester v. Powell, 120 La. 427, 45 South. 372; Rion v. Reeves, 122 La. 650, 48 South. 138.

In the instant case, the same act which declares that the owner of the property sells it for a cash consideration of $103.50 also declares that the vendor may redeem the property at any time within 10 years (from March 3, 1892) on payment of that amount in equal installments, payable on November 1, 1892, and November 1, 1893, respectively, said indebtedness being further evidenced by two notes of even date with the act, and paraphed to identify them therewith; and thereafter, according to the allegations of the petition, which, for present purposes, we take to be true, the vendor remained in undisturbed possession of the property, as owner, for about 18 years, and until she died, in, say, 1910, after which (but how long after does not appear) the defendants seem to have gone into possession.

It is clear, however, according to authorities above cited, that Marx Moch was merely a mortgagee, and had acquired no right to take possession under a vente à rémére of March 3, 1892, which, for 18 years, he had construed as a mortgage; and the question is whether he or his wife acquired such right by virtue of the conveyance by Sheppard of his rights under the tax sale; that conveyance having been made without warranty.

Sheppard, as we have stated, figured as the notary before whom Margaret Crutchfield affixed her mark to the power of attorney to Dinkins, who in turn affixed his mark, to the act whereby Margaret Crutchfield acquired the property; and he apparently made a mental note of the fact that, being an ignorant old negro woman, she would probably fail to pay her taxes when due. When, therefore, in the following year, the property was advertised for sale for taxes of the year in which she made the purchase, he bought it in for $10.89; but she, being then alive and in possession, he gave her no information as to what he had done, but laid the title away, and in December, 1892 (follow-

ing the vente à rémére to Moch, in March, 1892), sold it; such as it was, to Mrs. Moch, following which Margaret still remained in possession of the property, and so continued until she died, about 18 years later. Counsel for defendants says, in his brief, that plaintiffs have never offered to redeem the property, and have paid no taxes on it since 1889. But it is not surprising that they should have failed in those respects, for from 1889 to 1910, Margaret Crutchfield was the owner, in possession of the property; and it may be that she paid the taxes, or that Moch, the mortgagee, paid them, and charged them to her account; and that it was understood between them that he should do so; and that she made payments on account of the principal and interest of her debt to him, whereby the debt, upon a fair accounting, was really extinguished. We have no sufficient warrant for saying that such was the case, but such things have happened, and we certainly have no warrant for the assumption that, during the 18 years which intervened between the date upon which Moch (we will suppose) loaned Margaret the $103.-50 he neither took any steps in regard to its collection, or to the payment of the taxes, or the redemption of the property, in the event of its sale for taxes to a third person, which precluded him from acquiring a tax title to her prejudice. "Equity," this court has said, "treats the purchaser as a trustee for the vendor, and acts done to perfect the title by the vendee in possession inure to the benefit of the vendor." Pepper v. Dunlap, 5 La. Ann. 200; Watkins v. Gibbons, 10 La. Ann. 142; Littleton v. Pratt, 10 La. Ann. 487; Davis v. Jelks, 13 La. Ann. 432. It has also been held (in the language of C. C. 3282), that:

"In the civil law a mortgage is considered as a species of alienation, though not a sale; a real right upon property, a species of pledge,"

—and that a mortgage was within the meaning of a statute which authorizes the owner to redeem property which had been sold at tax sale. Alter v. Shepherd, 27 La. Ann. 209.

In another case it was said:

"If the true object of the sale with the right of redemption was to secure an indebtedness, * * * it was proper and right for the court * * * to hold the parties to their intention, and decree the title held, not one from which ownership results, but as a kind of security for the debt due. * * * This assignment of the title took the property off the conveyance and tax assessment records as that of the vendor, and placed the same on those records as that of the vendee," etc. Davis v. Kendall, 50 La. Ann. 1123, 24 South. 265.

[2] The defendant, Moch, then, as we conclude, from the allegations of the petition, came into the relations with Margaret Crutchfield, quoad the property here in question, and with the consequences, as thus set forth by a learned court of another jurisdiction, to wit:

"Wherever one person is placed in such a relation to another by the act or consent of that other, or by the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject or property or business, he is in such a fiduciary relation with him that he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated." Iroquois Iron Co. v. Kruse, 241 Fed. 441, 154 C. C. A. 273.

[3] Upon the face of the papers in this case, the fact that the tax title was acquired in the name of Mr. Moch's wife, instead of his name, does not, so far, affect plaintiff's rights in the premises; the presumption being that it inured to the same legal entity as though acquired in Moch's name.

It is therefore ordered and decreed that the judgment appealed from be annulled, the exception of no cause of action overruled, and the case remanded, to be proceeded with according to law and to the views herein expressed; the costs of the appeal to be paid by defendants, those of the trial court to await the final judgment.

PROVOSTY and O'NIELL, JJ., dissent.