(100 South. 401)

No. 25446.

## CRUTCHFIELD et al. v. MOCH et al.

(Jan. 7, 1924.   Rehearing Denied by Division B May 12, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Taxation** ⊙═736—**Tax title holder need not take physical possession of property.**

Notwithstanding there is a legal presumption against holder of tax title who permits original owner to remain in possession, it is not essential that holder of such title shall take physical possession of the property.

2. **Taxation** ⊙═726—**After passage of title by tax deed, deed of former owner conveyed nothing.**

Deed from former owner of land, executed three years after title passed to another under tax deed, *held* to convey nothing; former owner not having redeemed nor being record owner.

3. **Husband and wife** ⊙═133(7)—**Evidence held to show that wife paid for tax title out of separate earnings.**

Evidence *held* to show that tax title purchaser, who was a married woman, acquired money to buy such title from her wagon yard and grocery business, which under her marriage contract she was authorized to conduct on her own account.

Appeal from First Judicial District Court, Parish of Caddo; R. D. Webb and J. H. Stephens, Judges.

Suit by Moses Crutchfield and another against Marx Moch and another. Judgment for plaintiffs, and defendants appeal. Reversed, and suit dismissed.

Joseph H. Levy, of Shreveport, for appellants.

Hampden Story, John B. Files, and Edward Barnett, all of Shreveport, for appellees.

By Division A, composed of O'NIELL, C. J., and BRUNOT and ROGERS, JJ.

BRUNOT, J.   This case was before the Supreme Court in Crutchfield v. Moch, 148 La. 201, 86 South. 744. The issue presented was whether the petition disclosed a right or cause of action, and this court held that it did. An accurate statement of the case is given in the opinion as reported in that case. After a trial of the case on the merits, the lower court rendered a judgment in favor of the plaintiffs recognizing them as the owners of the property involved in the suit and reserving to them the right to sue for rents, profits, depredation, removal of timber, and taxes paid. From this judgment defendants have appealed.

A review of the record leads us to the conclusion that, if the tax title to J. Henry Shepherd and the conveyance of the property by him to Mrs. Diana Moch are valid, the suit should be dismissed, as all other issues pre-

sented are dependent upon the invalidity of those transfers.

In the case cited supra, Chief Justice Monroe, upon the subject of the tax title, says:

"Upon the face of the papers in this case, the fact that the tax title was acquired in the name of Mr. Moch's wife, instead of his name, does not, so far, affect plaintiff's rights in the premises; the presumption being that it inured to the same legal entity as though acquired in Moch's name."

[1] When the decision was rendered, the Chief Justice was considering an appeal from a judgment sustaining an exception of no cause of action and necessarily the merits of the case were not before him. The case is now before us on the merits, and the documentary evidence and oral testimony abundantly show that the property was acquired by Margaret Crutchfield February 28, 1888; that on July 5, 1889, the property was sold by the state of Louisiana for the taxes due thereon by Margaret Crutchfield for the year 1888 and was purchased by J. Henry Shepherd; that on December 23, 1892, J. Henry Shepherd sold the property to Mrs. Diana Moch; that after the tax sale to Shepherd neither Margaret Crutchfield, nor any one acting for her, attempted to redeem the property; that no fraud or irregularity is pleaded and the validity of the tax sale to Shepherd is not attacked. It is true that Margaret Crutchfield remained in possession continuously from the date of the tax sale to the date of her death, but the testimony shows that from the date of Mrs. Moch's purchase from Shepherd to the date of Margaret Crutchfield's death, the latter possessed the property as the tenant of Mrs. Moch, and paid Mrs. Moch an annual rent therefor. There is a legal presumption against the holder of a tax title who permits the original owner to remain in possession of the property, but all presumptions may be rebutted by evidence; therefore it is not essential that the holder of such a title shall take physical possession of the property. The proof in this case is that Margaret Crutchfield failed to redeem the property and after the period of redemption had lapsed Shepherd sold it to Mrs. Moch; and thereafter Margaret Crutchfield held it as a tenant and paid Mrs. Moch an annual rent for the privilege of occupying it. But it is contended that Mrs. Moch did not purchase the property with her paraphernal funds, and for this reason it fell into the community of acquêts and gains existing between her and her husband, Marx Moch, and it inured to the same legal entity as though acquired in Moch's name, and as Margaret Crutchfield, on March 3, 1892, sold the property to Marx Moch with the privilege of redemption, the purchase by Mrs. Moch from Shepherd operated as a redemption of the tax sale.

[2] The record shows that the deed from Margaret Crutchfield to Marx Moch was executed three years after the title to the property under the tax deed had passed to Shepherd. She had not redeemed the property and was not the record owner of it; therefore her deed to Marx Moch conveyed nothing.

With these facts before us, the fallacy of plaintiffs' contention is apparent.

Before the marriage of Diana Levy and Marx Moch, the following contract was entered into:

"Before me, Charles R. Griswold, a notary public, in and for the parish of Caddo and state of Louisiana, duly commissioned and qualified came and appeared Diana Levy, Simon Levy and Marx Moch, residents of said parish and state and well known to me said notary.

"And the said Simon Levy declared unto me said notary, that in consideration of the natural love and affection which he has and bears towards the said Diana Levy, his sister, he has donated, granted, given and delivered and does by these presents donate, grant and deliver unto the said Diana Levy, her heirs and assigns forever, the full sum of five thousand dollars in lawful money of the United States to be by her possessed, used and enjoyed as her own separate and paraphernal property in the event of her marriage with the said Marx Moch.

"And the said Diana Levy, being here present, accepts said donation and acknowledges the receipt of said money. And the said Marx Moch and the said Diana Levy, also declared unto me the said notary, that in view of this contemplated marriage, the celebration of which has been fixed for tomorrow the 21st day of November, A. D. 1875, and in order to determine and regulate their respective rights of property and to protect the separate estate of the said Diana Levy after marriage, they have made and entered into and do by these presents make and enter into the following marriage contract, viz.:

"First. The said Diana Levy, reserves the right to administer, personally her paraphernal property, present and future, without the assistance of her husband.

"Second. The said Marx Moch agrees not to interfere with the separate administration of her paraphernal property by the said Diana Levy.

"Third. It is agreed that the said Diana Levy, may appoint an agent or agents to administer her paraphernal property in her name and for her benefit.

"Fourth. It is specially agreed that the profits, fruits and revenues of the five thousand dollars donated in this act by Simon Levy to the said Diana Levy, and of all other paraphernal property, present and future, that belong or may hereafter belong to the said Diana Levy, shall be and remain her separate property and shall not enter into the community of acquêts and gains.

"Fifth. It is agreed that the said Diana Levy, shall have the right to carry on the business of a public merchant in her own name and on her own account, if she should please to do so at any time or place.

"Sixth. It is agreed that if any of the separate property or paraphernal effects of the said Diana Levy, should be administered by the said Marx Moch, either with or without the consent of the said Diana Levy, the profits, fruits and revenues of the same, shall not enter into the community of acquêts and gains, but shall remain the separate property of the said Diana Levy, as though administered by herself.

"Done and passed at my office, in the said parish of Caddo, in the presence of Alfred D. Land and Solomon Levy, competent witnesses, on this twentieth day of November, Anno Domini, 1875.             [Signed] Simon Levy.
                  "[Signed] Diana Levy.
                  "[Signed] Marx Moch.
"Attest:   Alfred D. Land.
     "Solomon Levy.
"Charles R. Griswold, Notary Public."

[3] The testimony shows that Marx Moch was an industrious but an impecunious ne'er do well; that he failed in business in 1890; that a settlement was effected with his creditors on the basis of 25 cents on the dollar, and Mrs. Moch, with her paraphernal funds, paid the sums due them; that thereafter Mrs. Moch took over the business and operated it for about two years as a public merchant, at which time she closed the original business and purchased a wagon yard in another portion of the city of Shreveport, which, together with an adjoining small grocery store, she has continuously operated as a public merchant. The record also shows that the money with which the payment of the purchase price of the property she acquired from Shepherd was made came out of her wagon yard and grocery business.

For these reasons we are of the opinion that Mrs. Diana Moch is the true and lawful owner of the property involved in this suit, that she acquired and holds a valid title thereto, and that the judgment of the lower court should be reversed. The judgment appealed from is therefore reversed, and this suit dismissed; the plaintiffs to pay costs in both courts.

Rehearing refused by Division B, composed of DAWKINS, LAND, and LECHE, JJ.